HOWARD B. STONE, APPELLANT, v. EDWIN F. GUTH; ROY HAUSGENS, EMMETT L. BARNES, THE EDWIN F. GUTH COMPANY, A CORPORATION, BUTLER-KOHAUS, INC., AND SUNLIGHT ELECTRIC COMPANY, A CORPORATION, RESPONDENTS.—102 S. W. (2d) 738.

St. Louis Court of Appeals. Opinion filed March 2, 1937.

Rehearing denied March 26, 1937.

*William S. Campbell* for respondent, Butler-Kohaus Company, a Corporation.

*Arnold Loewenstein* for respondents, Roy Hausgens and Sunlight Electric Company, a Corporation.

*Jacob M. Lashly* and *William S. Campbell* for respondents, Edwin F. Guth, and Edwin F. Guth Company, a Corporation.

*Charles A. Lich* and *Louis L. Hicks* for appellant.

SUTTON, C.—This case, which is an action to recover $1,050 for services alleged to have been rendered by plaintiff as business manager for defendants, comes to the writer by reassignment.

Plaintiff in his petition alleges that the defendants are and were at all the times mentioned in the petition members of an association known as the Associated Electrical Contractors, Inc., and that said association purported to be a corporation, but was never incorporated, and that the members thereof are and were copartners operating under the name and style of Associated Electrical Contractors, Inc.; that defendants as such Associated Electrical Contractors, Inc., published a magazine called the Electrical Trade Review; that one C. A. Steepleton was managing editor of said Electrical Trade Review and was the agent and servant of the defendants for the purpose of hiring employees to edit and publish said Electrical Trade Review; that on June 15, 1931, plaintiff was employed by defendants as business manager of the Electrical Trade Review at a weekly wage of $75, his duties being confined particularly to editing and publishing the Electrical Trade Review; that on June 16, 1931, he entered upon his duties as business manager and continued to fulfill his duties until September 16, 1931, at which time he quit and discontinued his employment.

Each of the defendants filed a verified answer denying generally

the allegations of the petition and denying specifically the existence of the partnership alleged in the petition.

The cause was tried to a jury. At the conclusion of plaintiff's case the court gave and read to the jury instructions in the nature of demurrers to the evidence on behalf of all of the defendants. Thereupon plaintiff took an involuntary nonsuit, and judgment was given accordingly. Plaintiff's motion to set the nonsuit aside was overruled. Plaintiff appeals.

Plaintiff complains here of the giving of the instructions in the nature of demurrers to the evidence as to defendants Edwin F. Guth Company and Roy Hausgens. He does not contend that he made out a case for the jury as to the other defendants.

Plaintiff testified that he was employed by C. A. Steepleton and J. J. O'Mara, secretary of the Associated Electrical Contractors, Inc., as business manager of a monthly publication, known as the Electrical Trade Review, at a wage of $75 per week; that he entered upon his duties as business manager on June 16, 1931, and continued in that position until September 16, 1931; that the Electrical Trade Review was a magazine that was a part of a campaign to combat the local electrical workers' union in St. Louis, and to inform the public of the conditions which existed and the various activities of the heads of that organization and the electrical trade generally; that the office was at first located in the Louderman Building; that there was a sign on the door of the office as follows:

"Associated Electrical Contractors, Inc.,
"Electrical Trade Review."

Plaintiff further testified that the office was afterwards removed to the Fullerton Building; that there was a like sign on the door of that office; that C. A. Steepleton was managing editor of the Electrical Trade Review; that Mr. Steepleton agreed to pay him $75 a week, and that this was approved by Mr. O'Mara; that they told him that they had $10,000 that had been furnished by electrical contractors; that he was told that the finance committee had a definite pledge of $10,000 as a campaign fund.

Plaintiff further testified that he first met Edwin F. Guth, president of the Edwin F. Guth Company, in the early part of July, 1931; that he called on him about advertising copy for the magazine and also for subscription thereto; that Mr. Guth complained that Mr. O'Mara had put an advertisement for the Edwin F. Guth Company in the Electrical Trade Review without authority; that he solicited him for an advertisement for the next issue, and that he replied that he would talk it over with others and let him know later; that he again talked with Mr. Guth in his office approximately a month later; that he talked with him about heading a committee for collecting funds for the organization, and that he replied that there

was a picket from the Electrical Union working out in front of his place; that he had a conversation with Mr. Guth again in his office in the latter part of August or first of September; that he went there with Mr. Steepleton, and that they talked with him about the organization getting some action about raising funds; that he again mentioned the picket out in front; that he was undecided at the time and said he would talk it over with some of the members of his firm; that he was acquainted with defendant Roy Hausgens; that Mr. Hausgens was introduced to him as president of the Associated Electrical Contractors; that to this introduction Mr. Hausgens said nothing other than that he was glad to know him.

William B. McBride testified that he was employed by Mr. O'Mara to assist him to get the Associated Electrical Contractors, Inc., in shape; that Mr. O'Mara had him go out and contact contractors to get them to join the organization or to contribute to its support; that he contacted Edwin F. Guth Company; that he called on Edwin F. Guth, the president of the company, and explained to him that Mr. O'Mara was trying to get members for the Electrical Contractors association; that he explained to Mr. Guth that the cost of joining the organization was $25 for initiation fee and $15 per month for dues; that the upshot of the matter was that Mr. Guth gave him a check for $40, payable to the Associated Electrical Contractors, $25 for initiation fee and $15 for dues; that he gave the check to Mr. O'Mara.

Plaintiff bottoms his case ''on the premise that where an asociation or group of individuals holds itself out as a corporation when as a matter of fact it is not incorporated, the members thereof become liable as copartners.''

With respect to the Edwin F. Guth Company plaintiff relies on the testimony of witness McBride showing that the company through its president paid an initiation fee of $25 and monthly dues of $15, and insists that the company was thus shown to have become a member of the association and individually liable as copartner for all the debts incurred by the association through any member or group of members thereof.

It does not follow, however, that because the Guth Company was a member of the association it was therefore liable for the debts incurred in the name of the association.

A voluntary unincorporated association as recognized and defined in the books, strictly speaking, is neither a partnership nor a *quasi* partnership. The members thereof, whatever may be their relations and liability to third persons dealing with the association, are not partners *inter sese*, since the death or withdrawal of a member does not of necessity work a dissolution of the association, and there exists no authority in a single member to bind the others. This is

especially true of associations which are not engaged in business enterprises and the objects of which do not contemplate profit and loss.

It is broadly stated as a general rule that an unincorporated association organized for profit is in legal effect a mere partnership so far as the liability of members to third persons is concerned, and that accordingly each member is individually liable as a partner for all debts contracted by the association within the scope of its object. But an association not engaged in business enterprises and the objects of which do not contemplate profit and loss is not a partnership, and the liability of its members for debts contracted in behalf of the association is governed not by the principles of partnership but by those of agency. Membership as such imposes no personal liability for the debts of the association, but to charge a member therewith it must be shown that he has expressly or impliedly authorized or ratified the contract upon which the liability is predicated. As a rule nonparticipating members are not liable.

A partnership is defined in the books as "a voluntary contract between two or more competent persons to place their money or effects, labor or skill, or some or all of them, in lawful commerce or business with the understanding that there shall be a communion of profits thereof between them."

In Willoughby v. Hildreth, 182 Mo. App. 80, 167 S. W. 639, it is said "that an agreement to share profits is an essential element of every partnership, and that the absence of profit sharing is conclusive that a partnership does not exist."

So, in Myers v. St. Louis Structural Steel Company (Mo.), 65 S. W. (2d) 931, our Supreme Court held that to constitute associates in an enterprise partners as to third persons, the associates must not only participate in the profits but must have an interest in the profits as such and share them as joint owners or principals of the business. The court further held in that case that the single circumstance that an associate is to have a share of the profits does not necessarily make him a partner so as to bind him by the acts of one who carries on the business.

The association involved here is not a partnership. There is absolutely no evidence of an agreement among the members to share profits. The objects of the association do not contemplate profits. The sole function and purpose of the association is to regulate certain affairs of its individual members connected with and related to their individual business enterprises as affected by the demands of the electrical workers' union, and its principal purpose appears to have its source in the advisability of united action in opposition to the united action of the electrical workers' union. [See Lindemann & Hoverson Co. v. Advance Stove Works, 170 Ill. App. 423.]

The courts recognize a distinction between a case wherein the mem-

ber of an unincorporated association sought to be held liable participated in or authorized the transaction upon which liability is predicated, and a case wherein the member did not so participate or so authorize.

In 13 Michigan Law Review, in an article in which the authorities are extensively reviewed and discussed, the author says:

"The cases placing the associates' liability upon partnership may be divided into two classes. In the first class it appears affirmatively in each case examined that the associates had participated in or authorized the transaction upon which they were held liable, or that they were directors or officers of the company. In the second class, the report is silent in every case examined upon the question of participation. After a somewhat extended search, the writer has not found a single case in which a nonparticipating associate, who had not authorized the transaction, was held to a general personal liability. Indeed, whenever the courts have been called upon to consider the case of nonparticipating associates, it appears that they have affirmatively held them not liable, and this has been true of courts which profess adherence to the theory of general partnership liability."

In Farmers State Bank v. Kuchs, 163 Mo. App. 606, 147 S. W. 862, it was held that the fact that an abortive attempt to incorporate was made and that one of the incorporators without authority, express or implied, assumed the right to act as the agent of the corporation, and as such agent contracted debts in the name of the corporation, were not, of themselves, sufficient to impose liability for the payment of such debts upon the projectors.

In Railroad Gazette v. Wherry, 58 Mo. App. 423, the court said that the projectors of a corporation, not consummated by reason of the failure to take necessary steps in the process of incorporation, can be held liable for debts contracted in the corporate name only upon proof of some element of estoppel, or of facts establishing that they authorized the contract out of which the debts arose.

In A. W. Mendenhall Co. v. Booher (Mo. App.), 48 S. W. (2d) 120, it was held that incorporators of a proposed but not completed corporation were held not liable for merchandise purchased in the name of the corporation without a showing that they authorized the purchase. [See, also, to the same effect, Semco Color Press Co. v. Bonded Reserve Life Ins. Co., 157 Okla. 238, and cases there cited.]

Plaintiff relies on Richardson v. Pitts, 71 Mo. 128. In that case the managers of an unincorporated association made expenditures and incurred debts on behalf of the association. The associates were held liable for such expenditures and debts, but for the obvious reason that the associates authorized the making of the expenditures and the incurrence of the debts.

Plaintiff also relies on Martin v. Fewell, 79 Mo. 401. In that case an association intending to be incorporated omitted to take a necessary step to effect its organization as a corporation. Debts were incurred on behalf of the association, and the associates were sued therefor. The association was organized for the purpose of conducting a retail mercantile business and the debts in suit were incurred in the conduct of that business with the authority and active participation of the associates. Of course, they were held liable.

In Booth v. Scott (Mo.), 205 S. W. 633, relied on by plaintiff, the associates sued, as we read the opinion, were active participants in the unlawful and fraudulent transaction out of which liability arose.

In Ferris v. Thaw, 72 Mo. 446, the members of a Masonic lodge, which had made an abortive attempt to become incorporated, were held liable upon a note executed by the officers of the lodge for the purposes of the lodge, but liability was expressly put on the ground that the giving of the note was ratified by the members and that this was equivalent to a prior authorization.

Manifestly the plaintiff here failed to make out a submissible case against the Guth Company. It was a mere nonparticipating member of the association. It had nothing to do with the employment of the plaintiff or the publication of the Electrical Trade Review.

Nor do we think a submissible case was made out against defendant Hausgens. Though he was, without protest, introduced to plaintiff as president of the association, it is not shown that he participated in any way in the management or supervision of the affairs of the association, or that he had anything to do with the employment of the plaintiff or the publication of the Electrical Trade Review, or with putting O'Mara and Steepleton in charge, or that he had or assumed any authority over them or the enterprise in which they were engaged. Indeed it does not appear by what authority they assumed to act for the association, or by what authority O'Mara assumed the role of secretary.

It is not the law that a mere nonparticipating member of an unincorporated association, not organized for the purpose of engaging in business for profit, is individually liable for whatever debts may be incurred in the name of the association. If such were the law, no person of any financial responsibility would want to take the risk of becoming a member of such an association.

The instructions in the nature of demurrers to the evidence were rightly given.

Plaintiff assigns error for the exclusion of an entry in what was designated as an account book offered for the purpose of showing membership of the defendants in the association. The competency or not of this entry becomes a mere moot question, since, as already

said, a mere showing of membership, without more, is insufficient to impose liability.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.