HELVERING, COMMISSIONER OF INTERNAL
REVENUE, *v.* SAFE DEPOSIT & TRUST CO.
OF BALTIMORE, TRUSTEE, ET AL.

No. 600.    Argued March 9, 1942.—Decided April 13, 1942.

*Assistant Attorney General Clark,* with whom *Solicitor
General Fahy* and *Messrs. J. Louis Monarch, Richard*

*H. Demuth,* and *Arthur A. Armstrong* were on the brief, for petitioner.

*Mr. Charles McH. Howard* for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

Because of the importance in the administration of the Federal Estate Tax of the questions involved, we granted certiorari to review the judgment of the Circuit Court of Appeals, 121 F. 2d 307, affirming a decision of the Board of Tax Appeals, 42 B. T. A. 145.

Zachary Smith Reynolds, age 20, died on July 6, 1932. At the time, he was beneficiary of three trusts: one created by his father's will in 1918, one by deed executed by his mother in 1923, and one created by his mother's will in 1924. From his father's trust, the decedent was to receive only a portion of the income prior to his twenty-eighth birthday, at which time, if living, he was to become the outright owner of the trust property and all accumulated income. His mother's trusts directed that he enjoy the income for life, subject to certain restrictions before he reached the age of 28. Each of the trusts gave the decedent a general testamentary power of appointment over the trust property; in default of exercise of the power the properties were to go to his descendants, or if he had none, to his brother and sisters and their issue *per stirpes.*

The Commissioner included all the trust property within the decedent's gross estate for the purpose of computing the Federal Estate Tax. The Board of Tax Appeals and the Circuit Court of Appeals, however, held that no part of the trust property should have been included.

I

The case presents two questions, the first of which is whether the decedent at the time of his death had by virtue of his general powers of appointment, even if never exer-

cised, such an interest in the trust property as to require its inclusion in his gross estate under § 302 (a) of the Revenue Act of 1926, 44 Stat. 9, 70. This section provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;"

The Government argues that at the time of his death the decedent had an "interest" in the trust properties that should have been included in his gross estate, because he, to the exclusion of all other persons, could enjoy the income from them; would have received the corpus of one trust upon reaching the age of 28; and could alone decide to whom the benefits of all the trusts would pass at his death. These rights, it is said, were attributes of ownership substantially equivalent to a fee simple title, subject only to specified restrictions on alienation and the use of income. The respondents deny that the rights of the decedent with respect to any of the three trusts were substantially equivalent to ownership in fee, emphasizing the practical importance of the restrictions on alienation and the use of income, and arguing further that the decedent never actually had the capacity to make an effective testamentary disposition of the property because he died before reaching his majority.

We find it unnecessary to decide between these conflicting contentions on the economic equivalence of the decedent's rights and complete ownership.[1] For even if we as-

---

[1] In declining to pass upon this issue, we do not reject the principle we have often recognized that the realities of the taxpayer's economic interest, rather than the niceties of the conveyancer's art, should determine the power to tax. See *Curry* v. *McCanless*, 307 U. S. 357, 371, and cases there cited. Nor do we deny the relevance of this principle

sume with the Government that the restrictions upon the decedent's use and enjoyment of the trust properties may be dismissed as negligible and that he had the capacity to exercise a testamentary power of appointment, the question still remains: Did the decedent have "at the time of his death" such an "interest" as Congress intended to be included in a decedent's gross estate under § 302 (a) of the Revenue Act of 1926? It is not contended that the benefits during life which the trusts provided for the decedent, terminating as they did at his death, made the trust properties part of his gross estate under the statute. And viewing § 302 (a) in its background of legislative, judicial, and administrative history, we cannot reach the conclusion that the words "interest . . . of the decedent at the time of his death" were intended by Congress to include property subject to a general testamentary power of appointment unexercised by the decedent.

The forerunner of § 302 (a) of the Revenue Act of 1926 was § 202 (a) of the Revenue Act of 1916, 39 Stat. 777. In *United States* v. *Field*, 255 U. S. 257, this Court held that property passing under a general power of appointment *exercised* by a decedent was not such an "interest" of the decedent as the 1916 Act brought within the decedent's gross estate. While the holding was limited to *exercised* powers of appointment, the approach of the Court, the authorities cited, and certain explicit statements [2] in the opinion left little doubt that the Court

as a guide to statutory interpretation where, unlike here, the language of a statute and its statutory history do not afford more specific indications of legislative intent. *Helvering* v. *Clifford*, 309 U. S. 331.

[2] *E. g.*: "But the existence of the power does not of itself vest any estate in the donee." (p. 263.)

"If there be no appointment, it [the property subject to the power] goes according to the disposition of the donor." (p. 264.)

". . . the interest in question [was] not . . . property of Mrs. Field at . . . her death." (p. 264.)

regarded property subject to *unexercised* general powers of appointment as similarly beyond the scope of the statutory phrase "interest of the decedent." [3]

After the *Field* case, the provision it passed upon was reënacted without change in the Revenue Act of 1921 (§ 402 (a), 42 Stat. 278) and in the Revenue Act of 1924 (§ 302 (a), 43 Stat. 304). If the implications of the *Field* opinion with respect to unexercised powers had been considered contrary to the intendment of the words "interest of the decedent," it is reasonable to suppose that Congress would have added some clarifying amendment.

If the counterparts in the earlier Acts of § 302 (a) of the Revenue Act of 1926 did not require the inclusion of property subject to an unexercised general testamentary power of appointment within the decedent's gross estate, there is no basis for concluding that the amendment of 1926 changed the act in this respect. Prior to 1926 an "interest of the decedent" was to be included in his gross estate only if subject "after his death . . . to the payment of the charges against his estate and the expenses of its administration and . . . subject to distribution as part of his estate." In the 1926 Act this qualification was abandoned. In the report accompanying the bill which embodied this change, the House Committee on Ways and Means stated only that "In the interest of certainty it is recommended that the limiting language . . . shall be eliminated in the proposed bill, so that the gross estate shall include the entire interest of the decedent at the time of his death in all the property." [4] Nothing in the report

---

[3] In *Burnet* v. *Guggenheim*, 288 U. S. 280, 288, this Court stated: "*United States* v. *Field* . . . holds that under the Revenue Act of 1916 . . . the subject of a power created by another is not a part of the estate of the decedent to whom the power was committed." It is to be noted that no distinction was recognized between exercised and unexercised powers under the rule of the *Field* case.

[4] House Report No. 1, 69th Cong., 1st Sess., 15.

suggested that the change was intended to have any relevance to powers of appointment, and no such intention can reasonably be inferred from the amended section itself. It is noteworthy that the regulations of the Bureau of Internal Revenue issued after passage of the 1926 Act contain no indication that the Treasury Department regarded the amendment as affecting unexercised powers of appointment. On the other hand, the article pertaining to powers of appointment was reincorporated in the 1926 regulations with the same content, so far as here relevant, as the corresponding article in the last regulations issued prior to the 1926 Act.[5]

When it was held in the *Field* case that property subject to an *exercised* general testamentary power of appointment was not to be included in the decedent's gross estate under the Revenue Act of 1916, this Court referred to an amendment passed in 1919 which specifically declared property passing under an *exercised* general testamentary power to be part of the decedent's gross estate. The passage of this amendment, said the Court, "indicates that Congress at least was doubtful whether the previous act included property passing by appointment." [6] In the face of such doubts, which cannot reasonably be supposed to have been less than doubts with respect to *unexercised* powers, Congress nevertheless specified only that property subject to exercised powers should be included. From this deliberate singling out of *exercised* powers alone, without the corroboration of the other matters we have discussed, a Congressional intent to treat *unexercised* powers otherwise can be de-

---

[5] Article 24 of Treasury Regulations 70 (1926 ed.) under the Revenue Act of 1926; Article 24 of Treasury Regulations 68 (1924 ed.) under the Revenue Act of 1924.

[6] *United States* v. *Field, supra,* 265.

duced. At the least, § 302 (f) of the 1926 Act,[7] the counterpart of the 1919 amendment referred to in the *Field* case, represents a course of action followed by Congress, since 1919, entirely consistent with a purpose to exclude from decedents' gross estates property subject to unexercised general testamentary powers of appointment.

In no judicial opinion brought to our attention has it been held that the gross estate of a decedent includes, for purposes of the Federal Estate Tax, property subject to an unexercised general power. On the contrary, as the court below points out, "the courts have been at pains to consider whether property passed under a general power or not so as to be taxable under Section 302 (f), a consideration which would have been absolutely unnecessary if the estate were taxable under 302 (a) because of the mere existence of a general power whether exercised or not." [8]  121 F. 2d 307, 312. In addition, the uniform administrative practice until this case arose appears to have placed an interpretation upon the Federal Estate Tax contrary to that the Government now urges. No regulations issued under the several revenue acts, including those in effect at the time this suit was initiated, prescribe that property subject to an unexer-

---

[7] "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

.        .        .        .        .

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth;" 44 Stat. 9, 70–71.

[8] See, *e. g.*, *Helvering* v *Grinnell*, 294 U. S. 153; *Rothensies* v. *Fidelity-Philadelphia Trust Co.*, 112 F. 2d 758.

cised general testamentary power of appointment should be included in a decedent's gross estate. Because of the combined effect of all of these circumstances, we believe that a departure from the long-standing, generally accepted [9] construction of § 302 (a), now contested for the first time by the Government, would override the best indications we have of Congressional intent.

## II

The second question is the treatment to be given, under § 302 (f) of the Revenue Act of 1926, to a share of the trust property passing to the decedent's brother and sisters as a result of a compromise settlement with other claimants. Should that share be included in whole or in part within the decedent's gross estate as "property passing under a general power of appointment exercised by the decedent ... by will"?

The claim of the brother and sisters was based upon: (1) a purported exercise of the power of appointment in their favor by the decedent in a will he executed in New York, and in the alternative, (2) their right to take in default of appointment under the terms of the trusts. Each of the two children of the decedent (1) denied the validity of the New York will and (2) challenging the right of the brother and sisters to take in default, independently asserted his own. These issues, complicated by many other factors which it is unnecessary here to discuss, were never finally resolved by judicial decision, although there had been much litigation involving them in the North Carolina courts. Eventually, the several claimants agreed to a compromise under which 37½% of the trust property went to the brother and sisters. The compromise was

---

[9] See I Paul, Federal Estate and Gift Taxation, p. 425: "As long as there is no actual or constructive exercise of the power, there can be no tax under the present statute."

confirmed by a judgment of the North Carolina Superior Court and this judgment was affirmed by the North Carolina Supreme Court. 208 N. C. 578, 182 S. E. 341.

The Government contends that a portion of the share received by the brother and sisters reflects recognition by the other claimants as well as by the North Carolina courts of the assertion that the power of appointment was validly exercised; and that under the doctrine approved by this Court in *Lyeth* v. *Hoey*, 305 U. S. 188, that portion must be treated as though it actually passed pursuant to an effective exercise of the power.

The *Lyeth* case, like the one now before us, came to this Court after a compromise settlement. An heir of the decedent had contested the validity of the decedent's will in which no provision had been made for him. The heir and the devisees and legatees under the will entered into a compromise providing that the will be probated and that a specific sum be paid to the heir. We held that the money the heir received pursuant to the compromise should be treated, with respect to his tax liability under the federal income tax statute,[10] as if acquired "by inheritance," for the reason that it was possible for him to receive it only "because of his standing as an heir and of his claim in that capacity." [11]

The claim of the decedent's brother and sisters here, so far as based on the validity of the purported appointment, had its roots, like the claimed invalidity of the will in the *Lyeth* case, in an issue never decided in litigation. If it had been litigated to final judgment by a competent tribunal and the brother and sisters had succeeded in establishing the validity of the exercise of the power, the

---

[10] Section 22 (b) (3) of the Revenue Act of 1932, c. 209, 47 Stat. 178, under which the *Lyeth* case arose, exempted from the income tax the "value of property acquired . . . by inheritance . . ."

[11] *Lyeth* v. *Hoey, supra,* 196.

inclusion in the decedent's gross estate of what they would have received as appointees, pursuant to § 302 (f), could not seriously be questioned. In the *Lyeth* case we said that "the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound." [12] There is no less reason for the same conclusion here.

The respondents contend that the principle of the *Lyeth* case,. announced by the Court with respect to income tax liability, should not be controlling where, as here, the question is one of estate tax liability. It is urged that taxes should not be influenced by what occurs after the taxable event; that it is reasonable to consider a compromise *preceding* the receipt of income in connection with an income tax; but that a compromise occurring *after* the decedent's death, which is the "taxable event" under an estate tax, should not be considered. Whatever may be the general rule in this respect,[13] this Court has clearly recognized, in *Helvering* v. *Grinnell*, 294 U. S. 153, that events subsequent to the decedent's death, events controlled by his beneficiaries, can determine the inclusion or not of certain assets within the decedent's gross estate under § 302 (f). In that case, the decedent had exercised a general testamentary power of appointment, an act which under § 302 (f) brings the property subject to the power within the gross estate. The subsequent renouncement by the appointees of the right to receive by appointment and their election to take as remaindermen in default of appointment were held by this Court to place the property subject to the power outside the scope of § 302 (f).

---

[12] *Id.*

[13] See *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 155.

The respondents further contend that, judicial determinations having been made in the state courts that the attempted appointment was invalid, the share of the brother and sisters in the compromise reflects only their alternative claim to the trust property. While there are explicit statements in the opinion of the North Carolina Superior Court that the attempted appointment was invalid, these statements must be regarded as superseded by the opinion which the North Carolina Supreme Court, whose determination constituted the final approval of the compromise, rendered on appeal. For, in the course of that opinion the Supreme Court gave clear recognition to the alleged validity of the decedent's attempted appointment as a basis of the claim the brother and sisters asserted. The court stated (208 N. C. 578, 618):

"Serious and grave questions of law and facts were raised. The judgment sets them out and we refer to same, all troublesome, but we will consider one for example: The validity and effect of the alleged will executed in New York by Zachary Smith Reynolds, as a basis of the offer of the brother and sisters of Zachary Smith Reynolds."

Inconsistent statements made in the course of a decree issued by the Circuit Court of Baltimore, Maryland, cannot be regarded as overcoming the force of the foregoing, since the decree purported only to authorize and direct the Maryland trustee to divide the trust property in accordance with the compromise as approved in North Carolina. How much, if any, of the 37½% going to the decedent's brother and sisters should be imputed to the claim based on the attempted exercise of the power of appointment and how much to their alternative claim we do not decide. In remanding this case to the Board of Tax Appeals for a determination of this issue, we recognize that a decision must necessarily be an approximation derived from the evaluation of elements not easily measured.

In matters so practical as the administration of tax laws and in the decision of problems connected with them, a high degree of precision is often impossible to achieve. But it is far better to make such a rough estimate as the data will permit than completely to ignore the realities of the compromise because of the difficulties of evaluation.[14]

The judgment of the Circuit Court of Appeals is reversed with directions to remand to the Board of Tax Appeals for further proceedings not inconsistent with this opinion.

*Reversed.*

The CHIEF JUSTICE, MR. JUSTICE ROBERTS, MR. JUSTICE FRANKFURTER and MR. JUSTICE BYRNES concur in the opinion of the court upon the first question decided. They dissent from the decision of the second question. They are of opinion that that question should be answered in favor of the respondents on the authority of *Helvering* v. *Grinnell,* 294 U. S. 153, and that *Lyeth* v. *Hoey,* 305 U. S. 188, furnishes no support for a different answer.

The estate in question is not that of the decedent. The property is a portion of the estates of his mother and father. It is conceded that no part of either estate passed by virtue of the execution by the decedent of the powers of appointment with which he was clothed. The property passed under the deed and wills of his parents, and that passage was the taxable event. If he had voluntarily refrained from exercising the power, his estate would not have been liable to pay an estate tax, for the property would then have passed from the estates of his mother and father to the distributees. But it has been decided by competent tribunals that he did not exercise the power, although he attempted so to do; and,

---

[14] Cf. *United States* v. *Ludey,* 274 U. S. 295, 302.

in any case, there is no determination here, or elsewhere, that the power was ever exercised. This being so, the question is whether anything passed from him to his relatives under the intestate law at his death. It is plain that nothing did so pass.

In *Helvering* v. *Grinnell, supra,* the decedent exercised the power, but the appointees, as was their right under state law, elected not to take under the appointment but to take as remaindermen directly from the estate of the creator of the power, and it was held that § 302 could not be invoked to impose a tax upon the estate of the decedent. It was there said:

"The crucial words are 'property passing under a general power of appointment exercised by the decedent by will.' Analysis of this clause discloses three distinct requisites—(1) the existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise. Clearly, the general power existed and was exercised; and this is not disputed. But it is equally clear that no property passed under the power or as a result of its exercise since that result was definitely rejected by the beneficiaries. If they had wholly refused to take the property, it could not well be said that the property had passed under the power, for in that event it would not have passed at all. Can it properly be said that because the beneficiaries elected to take the property under a distinct and separate title, the property nevertheless passed under the power? Plainly enough, we think, the answer must be in the negative."

*Lyeth* v. *Hoey, supra,* decides nothing to the contrary. In that case, the property in question was the property of the decedent himself. He disposed of it by will. The will was contested. The contest was compromised and, as a result, those who were his heirs at law received at

least a portion of that which they would have received as his heirs in the absence of a will. Thus, as a result of the compromise, property did pass from the decedent to his heirs at law, and it was held that, as they were his heirs, they took by inheritance in contemplation of the Revenue Act. Here, nothing passed by virtue of the exercise of the power and no portion of the decedent's estate passed under the law of descent and distribution, or as property would have passed under that law from the decedent to the beneficiaries of the compromise.

We are at a loss to understand how the Board of Tax Appeals can be permitted to find that any taxable transfer occurred within the meaning of § 302 of the Revenue Act of 1926. Moreover, the compromise was motivated by considerations other than the invalidity of the power, for the claims of the decedent's children had a large influence in bringing it about. We cannot perceive how the Board can calculate the relative weight of these conflicting claims and thus assess as taxable an apportioned part of the total amount the decedent's collateral relatives received, and thus determine what part of the property passed under the power and what part did not.