Herman PASTER, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 15703.

United States Court of Appeals
Eighth Circuit.

June 21, 1957.

Maurice Weinstein, Milwaukee, Wis.,
for petitioner.

Carolyn R. Just, Attorney, Department
of Justice, Washington, D. C. (Charles

K. Rice, Asst. Atty. Gen., and Hilbert P. Zarky, Attorney, Department of Justice, Washington, D. C., on the brief), for respondent.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court of the United States wherein the Tax Court affirmed the action of the Commissioner of Internal Revenue in determining deficiencies in petitioner's income tax for the fiscal years ending January 31, 1944, 1945 and 1946 in the respective amounts of $40,768.14, $24,588 and $34,637.69.

In the year 1937 one Samuel Taran took over from taxpayer a business then being operated by him under the name of Mayflower Novelty Company. The business was that of selling and distributing novelty equipment such as juke boxes, pinball machines and bowling alleys. At all times thereafter and until on or about January 31, 1946, the business was operated under the exclusive management and control of taxpayer at which time taxpayer purchased the business and became the sole owner. Income tax returns indicated that the business was that of a partnership composed of Samuel Taran, who was taxpayer's wife's uncle, Taran's nephew, J. H. Nilva, and a trust denominated as "S. H. Taran, J. H. Nilva Trust". Initially taxpayer's compensation was fixed at $35 per week plus 15% of the profits of the business. On some date not definitely shown, possibly late in 1939, taxpayer's compensation for services to Mayflower was increased to $75 per week plus 20% of the net profits and at the close of the fiscal year ended January 31, 1943, Mayflower, according to its books, was indebted to him for services rendered in the amount of $51,-511.82.

In the meantime and under date of December 29, 1942, taxpayer executed three instruments entitled respectively "Herman Paster—Trust Agreement for the Benefit of Celia Paster", "Herman Paster—Trust Agreement for the Benefit of Donald Joseph Paster" and "Herman Paster—Trust Agreement for the Benefit of Edward Jacob Paster". In each instrument it was recited that taxpayer had "transferred, assigned, set over and delivered * * * unto himself and Sam Walzer" as trustees "A Ten Thousand ($10,000.00) Dollar interest in the proceeds due Herman Paster as earnings for services rendered to the Mayflower Novelty Company." Celia Paster is taxpayer's wife and Donald Joseph and Edward Jacob are his sons. Except as to the named beneficiaries and the dates for termination of the trusts the instruments were identical and among other things each instrument recited that the trustees should have full power to sell, buy and manage any property comprising the trust property, "to collect, recover, and receive the income thereof and therefrom", and should not be responsible for any loss or damage which might result from the exercise of judgment or discretion "nor for any moneys or property except such as shall actually and in fact come into their possession" under the instrument; that no part of the income should be used to pay any life insurance premiums on policies on the life of taxpayer; that at least fifteen per cent of the income should be distributed annually to the beneficiary and the remainder distributed or retained as corpus in the discretion of the trustees; that the trusts should terminate on November 18, 1960, in the cases of Celia and Donald Joseph, that date being Donald Joseph's twenty-first birthday, and in the case of Edward Jacob on August 22, 1962, which would be his twenty-first birthday; that in the event of death of the beneficiary distributions were to go to issue, and there being no issue, to heirs at law; that the trustees should "keep and maintain separate books and records covering the trust estate"; that the trust was irrevocable and should not be capable of modification except as in the instrument specifically authorized and directed; that additions to

the trust res might be made by taxpayer or others by the execution to that effect by the contributor of an instrument in writing and written acceptance thereof by the trustees, and that each trustee should receive $100 per year as compensation for his services. Each instrument also contained other provisions not here material.

Under date of February 1, 1943, the $51,511.82 credited to taxpayer on Mayflower's books for services rendered was entered in an account entitled "Note Payable—H. Paster". Of the $51,511.82 there was no withdrawal of the $30,000 purportedly assigned by taxpayer to himself and Sam Walzer, his brother-in-law, as trustees under the trust instruments but under date of February 1, 1943 a debit of $30,000 was entered in the "Note Payable—H. Paster" account under the description "trans to Note payable—H. Paster, S. Walzer trust" and under the same date an account entitled "Note Payable—H. Paster, Sam Walzer Trust" was credited in the amount of $30,000 as "Amt set up as trust investment."

At the close of the fiscal year ended January 31, 1944, and as "Profits accruing to Trusts fiscal year end 1/31/44," $51,519.81 was entered as a credit to the above "Note Payable—H. Paster, Sam Walzer Trust" account. The amount so entered had been taken from a memorandum or tabulation prepared by Walter Johnson, Mayflower's bookkeeper. On this tabulation entitled "Mayflower Distributing Co.—Determination of moneys due others—year 2/1/43–1/31/44," and after Mayflower's "Combined income," together with some limited breakdown thereof, was shown as $245,332.42, the following appeared:

"In consideration of $10,000.00 invested in business for each of 3 trusts the partnership has agreed to pay 7% of profits to each of trusts in return the original investment to remain in business & not subject to being withdrawn without consent of partnership

| | |
|---|---|
| 7% due Celia Paster Trust | 17,173.27 |
| 7% due Donald Paster Trust | 17,173.27 |
| 7% due Eddie Paster Trust | 17,173.27 |
| 21% totals | 51,519.81 |
| 14% due H. Paster for services rendered | 34,346.54 |
| Total Amt. due others | 85,866.35" |

There was testimony that the above tabulation was prepared by Johnson on instructions from Taran and it was shown to Taran before entries were made therefrom in Mayflower's books. Tabulations similar to that indicating "moneys due others" for the fiscal year 1944 were prepared at the close of the fiscal year ended January 31, 1945, and January 31, 1946, from which credit entries to the "Note Payable—H. Paster, Sam Walzer Trust" account were made, the credit under date of January 31, 1945, being shown as "Profits for year end 1/31/45," as $33,879.66 and that under date of January 31, 1946, as "Profits for fiscal yr end 1/31/46," as $31,680.-28.

Taxpayer testified that Mayflower and the trustees agreed that in consideration of the trustees permitting the company to retain the corpus of the trusts in the business and agreeing not to withdraw the funds without Mayflower's consent the company would pay to each trust 7% of its annual profit. There was no written contract covering this alleged agreement as to the profit-sharing arrangement either between taxpayer and the trusts, or between Mayflower and the trusts, or between taxpayer and the named beneficiaries. Taxpayer testified in effect that Taran knew of taxpayer's action in creating the trusts and that he consented to the arrangement by which the trusts were to receive in the aggregate 21% of the profits of the business. Taran, however, was not called as a witness, nor was any other member of the partnership called as a witness.

In the regular course of keeping Mayflower's accounts and in the reporting of its income the amounts credited to the "Note Payable—H. Paster, Sam Walzer Trust" account, and as derived from the

21% of the profits due the three trusts and the 14% of the profits due taxpayer were lumped together on Mayflower's books as selling expenses. The income tax returns for all three years in question listed the so-called income to the trusts as "Selling Expenses" along with taxpayer's salary and bonus in contrast to the treatment of interest on loans and finance fees which were deducted as "administrative expenses". The evidence will be further developed in the course of this opinion.

The Tax Court, based on a consideration of all the evidence made the following, among other, findings:

"We have since examined and re-examined the transcript and the other evidence of record, and taking into account the record as a whole, we are satisfied and have found as a fact that in so far as the side tabulations of moneys or percentages of profits 'due others' for the fiscal years ended January 31, 1944, 1945 and 1946, the entries made on the Mayflower books and the sheets maintained by Johnson or other records relied on herein tend or purport to show that the amounts in question were the income of the trusts and not the income of petitioner, they were shams and did not reflect the truth."

Having found the issues in favor of respondent the court entered its decision determining that there were deficiencies in petitioner's income tax for the taxable years 1944, 1945 and 1946 in the respective amounts of $40,768.14, $24,588 and $34,637.69.

Petitioner in effect urges that the evidence is insufficient to sustain the decision of the Tax Court and that under the evidence and the applicable law the income held to be taxable to petitioner was in fact income of the trusts which were valid and irrevocable.

■ In considering the contentions of petitioner we must have in mind the applicable rules relative to the evaluation of the evidence in this class of cases. In the first place, the transactions involved are within a family group and must be subjected to special scrutiny "lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) [26 U.S.C.A. § 22(a)] is concerned." Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788. The Commissioner determined deficiencies in taxpayer's income tax for the years here involved and that determination is presumed to be correct so that before the Tax Court the burden was upon the taxpayer to prove its incorrectness.

■ There can be no doubt that the funds purportedly transferred to the taxpayer and his brother-in-law, Sam Walzer, as trustees were the funds of taxpayer and at least prior to their purported transfer they constituted income taxable to him. It is axiomatic that income is taxable to the one who is the source of the income and who has control over its disposition and it is of no consequence for taxation purposes that the one who creates or is responsible for the income does not receive it but channels it into the hands of another. Treasury Regulation 111 promulgated under the Internal Revenue Code of 1939, provides in part that:

"Income of a trust is taxable to the grantor under section 22(a) although not payable to the grantor himself and not to be applied in satisfaction of his legal obligations if he has retained a control of the trust so complete that he is still in practical effect the owner of its income."

In the instant case taxpayer, from a practical standpoint, retained complete control of these so-called trusts. The funds were his; he named himself as trustee together with his brother-in-law; the beneficiaries were members of his family, two of them minors; he in effect loaned the funds to a partnership of which he had complete control and in doing so contracted with that partnership as to the terms of the loan. In fact, under the terms of the trust instruments he and his co-trustee were given complete

control over the trust funds and while the trust instruments provided for termination of the trusts the alleged agreement with the partnership provided that the funds could not be withdrawn without the consent of the partnership. In making this alleged agreement the taxpayer made it impossible for the trusts to terminate without the consent of the partnership and the book entries warranted the Tax Court in concluding that the corpus of these so-called trusts and the income therefrom were treated by taxpayer as belonging to him.

It is not the function of the Court of Appeals on petition for review of a decision of the Tax Court to try the case de novo. The Tax Court is a fact finding tribunal and in the instant case the determination of whether the alleged transfers of petitioner's funds rendered him immune from income tax liability was one to be made by the Tax Court and that determination should not be set aside by this court unless clearly erroneous. Not only the facts but the inferences that may reasonably be drawn therefrom are in the first instance at least for the Tax Court to determine. Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S. Ct. 715, 92 L.Ed. 898. We think the Tax Court was warranted in holding that the taxpayer should be treated as owner of the corpus of the alleged trusts and the income arising therefrom. Helvering v. Clifford, supra; Commissioner of Internal Revenue v. Sunnen, supra; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Doll v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 239; Yiannias v. Commissioner of Internal Revenue, 8 Cir., 180 F.2d 115. In Helvering v. Clifford, supra, which was appealed from this court, the basic facts were somewhat similar to those in the instant case in that the taxpayer there, as here, attempted to create a trust. In the course of that opinion it is said:

"Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which in-

ventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus. See Blair v. Commissioner, 300 U.S. 5, 12, 57 S.Ct. 330, 333, 81 L.Ed. 465. In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned.

"In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22(a).

"So far as his dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before. The wide powers which he retained included for all practical purposes most of the control which he as an individual would have."

In the instant case taxpayer had in effect the same dominion and control over the corpus of these alleged trusts and the income arising therefrom as he had before the trust agreements were executed. There is no evidence that the cestui que

trusts ever exercised any control over the so-called trust funds.

The teaching of the Clifford case was further amplified and emphasized by the Supreme Court in Commissioner of Internal Revenue v. Sunnen, supra. In that case the paramount issue was whether the taxpayer retained sufficient power and control over property allegedly assigned to his wife to make it reasonable to treat him as the recipient of the income for tax purposes. In the course of the opinion it is, among other things, said [333 U.S. 591, 68 S.Ct. 723]:

"It is in the realm of intra-family assignments and transfers that the Clifford-Horst line of cases has peculiar applicability. While specifically relating to short-term family trust, the Clifford case makes clear that where the parties to a transfer are members of the same family group special scrutiny is necessary 'lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned.' * *

"The principles which have thus been recognized and developed by the Clifford and Horst cases, and those following them, are directly applicable to the transfer of patent license contracts between members of the same family. They are guideposts for those who seek to determine in a particular instance whether such an assignor retains sufficient control over the assigned contracts or over the receipt of income by the assignee to make it fair to impose income tax liability on him.

*   *   *   *   *   *

"* * * As to the legal foundation of the Tax Court's judgment on the tax consequences of the assignments, we are unable to say that its inferences and conclusions from those facts are unreasonable in the light of the pertinent statutory or administrative provisions or that they are inconsistent with any of the principles enunciated in the Clifford-

Horst line of cases. Indeed, due regard for those principles leads one inescapably to the Tax Court's result. The taxpayer's purported assignment to his wife of the various license contracts may properly be said to have left him with something more than a memory. He retained very substantial interests in the contracts themselves, as well as power to control the payment of royalties to his wife, thereby satisfying the various criteria of taxability set forth in the Clifford-Horst group of cases. *  *  *

"* * * Despite the assignments, the license contracts and the royalty payments accruing thereunder remained within the taxpayer's intimate family group. He was able to enjoy, at least indirectly, the benefits received by his wife. And when that fact is added to the legal controls which he retained over the contracts and the royalties, it can fairly be said that the taxpayer retained the substance of all the rights which he had prior to the assignments."

In the instant case not only was the taxpayer in a position to enjoy indirectly the benefits accruing to his wife but also those accruing to his two minor sons.

This court has consistently followed the admonitions of the Clifford and Horst cases. Thus in Doll v. Commissioner of Internal Revenue, supra, we said [149 F.2d 243]:

"Our immediate concern is (having income taxation in mind) with the third of these rules for construction of revenue acts—that having to do with the purposes of the taxing act. 'The dominant purpose of the revenue laws (as to incomes) is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid' (Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655) and this includes 'any economic or financial benefit.'

Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591 [89 L.Ed. 830]. Substance and not form controls in applying income tax statutes and 'the realities of the taxpayer's economic interest, rather than the niceties of the conveyancer's art, should determine the power to tax.' Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 58, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513, note 1.

"In view of the rules in the preceding paragraph and of the very broad scope given, in the various revenue acts (here section 22(a) of the 1936 Act, 26 U.S.C.A. Int.Rev. Code § 22(a), to the definition of gross income subject to taxation, the Supreme Court has stated general criteria as aiding in determining tax liability as to income derived from capital, from labor, and from combined capital and labor. Since tax liability on income from capital is based on ownership, the criterion there has to do with possession of attributes of ownership by the taxpayer—such as control by (Harrison v. Schaffner, 312 U.S. 579, 580, 61 S. Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916) or benefits to him (Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L. Ed. 3, 101 A.L.R. 391). * * *

"A recurring situation is that involving a family group. Usually, a family group is an economic unit. Therefore, as to transactions within such a group 'special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned.' Helvering

v. Clifford, 309 U.S. 331, 335, 60 S. Ct. 554, 84 L.Ed. 788. The test applied in the Clifford case was whether a conveyance by taxpayer in trust for his wife had made 'any substantial change in his economic position,' 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788. The family relationship does not preclude arrangements between its members which will affect tax liability (Commissioner of Internal Revenue v. Branch, 1 Cir., 114 F.2d 985, 987, 132 A.L.R. 839) but it is 'one of the elements to be considered by the trier of the facts.' Commissioner of Internal Revenue v. Katz, 7 Cir., 139 F.2d 107, 110.

"We have here a written instrument which is sufficient to create a partnership, both at common law and under Missouri decisions. Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584; Stone v. Guth, 232 Mo.App. 217, 102 S.W.2d 738. The judgment here is at most an adjudication of what was never in doubt. The existence of such a contract is not determinative of this tax issue. There remains the impact of the test of an analysis of 'all the circumstances attendant on its creation and operation.' Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788. This test must be applied in view of the statutory scheme of taxation prescribed in § 22(a), Clifford case, 309 U.S. at page 334, 60 S.Ct. at page 556, 84 L.Ed. 788, and under the special scrutiny arising from the situation that only a husband and wife are parties to the contract. Clifford case, 309 U.S. at pages 335–337, 60 S.Ct. at pages 556, 557, 84 L.Ed. 788. The question posed for this analysis is whether this contract caused 'any substantial change in his (petitioner's) economic position.' Clifford case, 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788. The answer is to be found in the pertinent facts. Determination of such fact situation is

the exclusive province of the Tax Court and its decision must be upheld if based upon substantial evidence."

Again in Yiannias v. Commissioner of Internal Revenue, supra, we said [180 F. 2d 118]:

"The purpose and intent of the income tax law is taxation to those who earn or otherwise create the right to receive income and a taxpayer may not avoid liability for income tax on his income by assigning the right to receive it."

 Taxpayer asserts that the decision of the Tax Court finds no affirmative evidence in its support. There was, however, the determination of the Commissioner of the deficiencies in taxpayer's income tax returns. This was presumptively correct and the burden was on taxpayer to prove otherwise. The proof was without dispute that the corpus of these alleged trusts belonged to the taxpayer and there were the attending circumstances which, except for certain testimony of the taxpayer and the testimony of the bookkeeper of the concern over which taxpayer had complete control and which the Tax Court was not obliged to credit, conclusively showed that the taxpayer had complete dominion and control, with all the attributes of ownership, over these so-called trust funds. There was, as has heretofore been indicated, no evidence that the beneficiaries ever exercised any control over these so-called trust funds. None of them testified; neither did Taran nor Walzer testify. The transactions were given special scrutiny by the Tax Court and the inferences which it drew from all the attending circumstances and its decision that "The profits of Mayflower credited on its books to the 'Note Payable —H. Paster, Sam Walzer Trust' account for each of the fiscal years ended January 31, 1944, 1945 and 1946, were income to petitioner and in so far as the side tabulations of moneys or percentages of profits 'due others' for each of those years or the entries made on Mayflower's books or the three sheets maintained by Johnson,

tend or purport to show otherwise, they are shams and do not reflect the facts" were, we think, fully warranted.

We are of the view that the decision of the Tax Court is abundantly sustained by the evidence and its decision is therefore affirmed.