**Albert SCHOENBERG, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16893.**

United States Court of Appeals
Eighth Circuit.

April 24, 1962.

V. E. Phillips, Kansas City, Mo., made argument for petitioner and filed brief.

Kenneth E. Levin, Atty., Tax Division, Dept. of Justice, Washington, D. C., made argument for the respondent and Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Tax Division, Dept. of Justice, Washington, D. C., filed brief for respondent.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HENLEY, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer Albert Schoenberg has filed timely petition for review of the decision of the Tax Court filed August 21, 1961, (T. C. Memo 1961–235, not officially reported) determining deficiencies in tax in the amount of $44,018.48 for the year 1952 and $6646.26 for the year 1954, plus additions for each year under § 294(d) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 294(d) (2).[1] Jurisdiction is established.

The question for decision before the Tax Court was whether the Commissioner properly determined taxpayer received taxable income as a result of the sale of three parcels of Kansas City real estate in 1952 and 1954. The Tax Court upheld the Commissioner's determination.

Taxpayer challenges the validity of the Tax Court's decision, asserting in substance that he overcame any burden of proof resting upon him to overcome the presumption of correctness of the Commissioner's determination by introducing paper evidence clearly showing Marie Letourneau to be the owner of the profits which the Commissioner was seeking to collect from him and by his uncontradicted testimony that the real interests of the parties were those set out in the written documents. Taxpayer contends that the Tax Court erred in finding that the 50 percent of the profits from the sale of the real estate, which the documentary evidence showed to be the prop-

1. The § 294(d) (2) additions are for substantial under-estimation of estimated tax. The validity of such additions is dependent upon whether the deficiencies were properly determined.

erty of Marie Letourneau, was income of the taxpayer taxable as ordinary income.[2]

The three parcels of real estate involved in this case are the Deere property, the 26th and Central property and the 809–11 property, all located in Kansas City, Missouri. Taxpayer has been since 1905 a licensed real estate broker in Kansas City, Missouri, in good standing. He has over a period of years handled a number of real estate transactions for Louis Schutte, a substantial real estate owner. In 1942, taxpayer consulted Louis Schutte concerning the purchase of the Deere property. It was purchased for $10,000, Schutte paying $9500 and Marie Letourneau paying $500. Title was taken in the name of Mr. and Mrs. Schutte, who in turn entered into a written contract with Miss Letourneau which provided that upon sale of the property the net profits after adjustments for capital contributions were to be divided equally between Mr. Schutte and Miss Letourneau. Upon sale of the property in 1952, a schedule of receipts and disbursements was prepared and Miss Letourneau was paid one-half of the net profits amounting to $55,853.61. Taxpayer received a real estate commission from Deere when the property was acquired and another commission when it was sold in 1952.

The acquisition and sale of the other two properties was handled in much the same manner. On the 26th and Central property, Miss Letourneau paid $75 of the $3720 purchase price and on the sale thereof in 1954 received one-half of the net profit amounting to $15,904.31. On the 809–11 property, Mr. Schutte paid $1000 and Miss Letourneau paid $50 and upon sale in 1952 Miss Letourneau received one-half of the net profit amounting to $3300.88.

The Commissioner and the Tax Court held that the one-half of the net profits of these transactions paid to Miss Letourneau was in fact income of the taxpayer. There is no dispute in this case

as to the half of the profits allocated to Mr. Schutte. What is involved is the one-half of the profits received by Miss Letourneau.

It is quite true, as taxpayer states, that on the basis of the deeds, contracts and papers in evidence taxpayer had no interest in the three tracts of real estate here involved or in the proceeds or profits thereof. Taxpayer, as a witness, testified that the half interests in the property and profits arising therefrom were as stated in the documentary evidence and that he had no financial interest in any of said transactions except for real estate commissions, which commissions are not involved in this case.

The definition of income in the revenue statutes is very broad. Section 22, I.R.C.1939, § 61, I.R.C.1954, 26 U.S.C.A. §§ 22, 61. See Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788. If the taxpayer is the real owner of one-half of the profits from the sale of the real estate, a tax upon his interest would be appropriate regardless of what the exhibits in evidence might show as to paper ownership. The Tax Court in effect found that the taxpayer rather than Miss Letourneau was the real owner of the one-half of the profits. If there is substantial evidence to support such finding, the decision of the Tax Court is entitled to be affirmed.

Taxpayer, apparently for the purpose of placing the burden of proof upon the Commissioner, contends that this is a fraud case. We do not agree. No fraud is pleaded. No fraud penalty is claimed. The Commissioner contended and the Tax Court found that fifty percent of the profits belonged to taxpayer rather than Miss Letourneau.

"Substance and not form controls in applying income tax statutes and 'the realities of the taxpayer's economic interest, rather than the niceties of the conveyancer's art, should determine the power to tax.' Helvering v. Safe Deposit & Trust Co. of

---

2. No contention was made in the Tax Court nor here that the profits were en-

titled to long term capital gain treatment.

Baltimore, 316 U.S. 56, 58, 62 S.Ct. 925, 86 L.Ed. 1266." Paster v. Commissioner, 8 Cir., 245 F.2d 381, 387.

To like effect, see Boykin v. Commissioner, 8 Cir., 260 F.2d 249, 254; Lannan v. Kelm, 8 Cir., 221 F.2d 725, 733.

■ Taxpayer concedes that Miss Letourneau was for practical purposes a member of his family.

"[A]s to transactions within such a group 'special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned.' Helvering v. Clifford, 309 U.S. 331, 335, 60 S. Ct. 554, 84 L.Ed. 788." Paster v. Commissioner, 8 Cir., 245 F.2d 381, 387.

■ The standards for review of fact findings of the Tax Court are well established. Decisions of the Tax Court are reviewable in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury. § 7482, I.R.C.1954, 26 U.S.C.A. § 7482. If the Tax Court's findings are supported by substantial evidence upon the record as a whole, and are not against the clear weight of the evidence or induced by an erroneous view of the law, they cannot be upset. Sachs v. Commissioner, 8 Cir., 277 F.2d 879, 881; Kemper v. Commissioner, 8 Cir., 269 F.2d 184, 185.

In the Kemper case we stated:

"It is beyond cavil that we, as a reviewing court, may not retry issues of fact, that we are not the judges of the credibility of the witnesses, that the findings of the Tax Court are presumptively correct, and that the burden rests with the petitioner to show that such findings are 'clearly erroneous' before this court may set them aside." 269 F.2d 185–186.

■■ The question of credibility of witnesses is for the trier of the facts.

A court is not compelled to believe the testimony of a witness even if it is not contradicted by direct evidence. This is particularly true with regard to an interested witness. Powers v. Continental Cas. Co., 8 Cir., 301 F.2d 386; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440.

Taxpayer's contention that the Tax Court erred in finding that Schutte's testimony was of no avail to the taxpayer, is without merit. As stated by the Tax Court, Schutte testified that he had no knowledge of the relationship or the nature of the dealings between the taxpayer and Miss Letourneau. Schutte also testified that he had no direct dealings with Miss Letourneau, and that all of his dealings were with the taxpayer.

The transactions here involved are very unusual. We believe there was substantial circumstantial evidence rebutting the taxpayer's evidence in the form of deeds, contracts and records of disbursements of profits, as well as the taxpayer's own testimony that he had no interest in the profits. The following evidence supports the inferences drawn by the Tax Court:

1. Taxpayer was the finder of the advantageous real estate deals from which the profits were realized. He had previously directed Schutte to profitable real estate investments. He conducted the negotiations and prepared the contracts defining the rights of the parties. Mr. Schutte and Miss Letourneau did not know each other. It is not reasonable to suppose that Schutte would undertake to give Miss Letourneau one-half of the profits and assume all risks of loss for her small contributions to the purchase price. It is much more likely that Mr. Schutte relinquished one-half of the profits as a consideration for taxpayer making available a deal which he recognized as having substantial profit possibilities.

2. Taxpayer was heavily involved financially during the pertinent period here involved, owing debts aggregating some $800,000 including federal tax liens, and hence he was not in a position to acquire or hold any property interest in his own name.

3. Miss Letourneau had resided in defendant's household for many years and while she initially went into the household as an employee, she had accepted no compensation for her services since 1931. Taxpayer considered her to be a member of his family.

4. At the time the profits were realized, Miss Letourneau made loans to the taxpayer which when added to the income tax she paid upon the profits practically equalled the total of the profits.[3]

Taxpayer was 74 years of age. Miss Letourneau knew he was insolvent. Taxpayer under oath testified before a revenue agent with reference to the notes as follows:

"Q. Do you have any idea when you will start paying?

"A. I haven't the least idea. Why should I make promises I can't keep.

"Q. As a matter of actual fact, isn't there quite a good possibility that these notes will never be paid?

"A. I hope they will be. That is all I can tell you."

Taxpayer was unable to explain the purpose of the loans made to him.

With reference to the circumstantial evidence, the Tax Court states: "These circumstances provide an understandable basis for the real estate transactions which would otherwise be unintelligible in an ordinary business sense."

■■ Taxpayer complains of the fact that the Tax Court placed considerable emphasis in its opinion upon the fact that Miss Letourneau did not testify at the trial and its conclusion that her testimony would be presumed to be unfavorable to petitioner. Taxpayer contends that the record would not have been changed in any material particular had Miss Letourneau testified and that the Government had a transcript of her testimony before the revenue agents which it could have offered.

Miss Letourneau, although subpoenaed by the Government, was not called as a witness by either party. At the time of the trial she was residing in taxpayer's home, as a member of the family. The evidence shows that she was suffering from some infirmities but does not satisfactorily show she was unavailable as a witness. The Tax Court, citing Thomas E. Snyder Sons Co. v. Commissioner, 7 Cir., 288 F.2d 36, and Meier v. Commissioner, 8 Cir., 199 F.2d 392, states: "The conclusion must be that, had Marie testified, her testimony would have been unfavorable to the petitioner upon whom the burden of proof rests."

We have serious doubt whether in a situation such as is presented here, where the witness was apparently equally available to both parties, any presumption should flow from the failure of either party to call such witness. Any rule creating a presumption from failure to produce a witness must be applied with caution. See Mammoth Oil Co. v. United States, 275 U.S. 13, 52, 48 S.Ct. 1, 72 L. Ed. 137; Johnson v. United States, 8 Cir., 291 F.2d 150, 155, and cases there cited.

The Meier case, cited by the Tax Court, is distinguishable as there it was the petitioners who failed to testify. The court in the Snyder case does not appear to rest its opinion on the presumption theory.

We do not believe that the taxpayer has demonstrated that he has been prej-

3. The Tax Court in its opinion states: "In 1952, Marie reported a gain from the sale of the Deere property and the 809-11 property of $58,654.49. From April 1, 1952, through January 14, 1953, Marie loaned petitioner $34,800, in addition to paying two notes totaling $5,500. She also paid $14,735.86 in Federal income taxes on the gain she reported in 1952. In 1954, Marie reported a gain of $15,-904.31 on the sale of the 26th and Central property. From March 1, 1954, through December 28, 1954, Marie loaned petitioner $17,000. She also paid Federal income taxes of $2,496.81 on the gain she reported. * * * Moreover, it is to be noted that the purported loans from Marie to petitioner plus the Federal income tax paid approximates the amount of the gain on the sale of the three properties."

udiced in any respect by the Tax Court's discussion of the presumption issue. Our reading of the Tax Court's opinion satisfies us that it gave no controlling consideration to the presumption. The court's statement with reference thereto appears near the end of the opinion, and its discussion with reference to the presumption follows its conclusion on the basic facts in the case. The taxpayer in his brief states that Miss Letourneau's testimony would not have changed the record. In our consideration of this case, we have given no weight to any presumption which might arise from the failure of Miss Letourneau to testify.

A careful examination of the entire record satisfies us that the Tax Court's fact findings supporting its decision are based upon substantial evidence. The taxpayer has failed to demonstrate that the basic findings upon which the Tax Court decision rests are clearly erroneous.

The decision of the Tax Court is affirmed.