Herman Paster and Celia Paster v. Commissioner.
Paster v. Commissioner
Docket Nos. 75409, 78178.
United States Tax Court
T.C. Memo 1961-240; 1961 Tax Ct. Memo LEXIS 111; 20 T.C.M. (CCH) 1239; T.C.M. (RIA) 61240; August 24, 1961
*111 1. Petitioner, Herman Paster, in 1942, executed three irrevocable trust instruments for the benefit of his wife and two sons which provided, inter alia, that the corpus would be an interest in certain amounts due him from a partnership (Mayflower Novelty Co.) of which petitioner was general manager. These funds were retained by the partnership and used in its business with the understanding that the trusts would receive a share of the profits of the business. As of December 31, 1946, accumulated funds in the amount of $110,735.41 had been credited to the alleged trusts by said partnership but had not been paid over to them, and were retained by the business. Petitioner and his brother-in-law were the named trustees in each of the aforesaid indentures. In 1946 (prior to the first taxable year involved herein) Herman acquired the assets and assumed the liabilities of the aforesaid partnership by the cancellation of the sum due him by the partnership and the purported assignment to the trusts of certain securities and equities in real estate. One parcel of said realty was his personal residence in which he continued to live throughout the years involved and which did not contribute to *112 the income in question. Title to the remaining parcels, two apartment buildings, was not actually conveyed by deed in trust to the trusts until December 1958. All rents collected from said buildings were deposited in the bank account of Paster Enterprises, a real estate business, owned and controlled by petitioner and his wife. The net rentals were retained by Paster Enterprises. In 1949, the securities purporting to be held by the trusts were disposed of and the cash proceeds turned over to Progress Finance (all of the stock of which was owned by petitioner) as loans receivable. In 1950, the mortgages on the aforesaid realty were refinanced and the proceeds turned over to the two Paster businesses as loans receivable. In 1953, for the first time, a bank account was established in the name of the trusts. There is no evidence as to the adequacy of the security, if any, for such loans. Virtually no cash distributions were made to the designated beneficiaries during the years involved herein. Held: That the purported trusts are not to be recognized as valid and subsisting for Federal income tax purposes in the years in question and the asserted trust income is taxable to petitioner. *113 2. Petitioner's 1952 return contains a schedule indicating that prior to 1951 petitioner and Eichinger jointly purchased stock in a company; that in 1951 petitioner received dividends on said stock of $7,020, half of which belonged to Eichinger; and that petitioner inadvertently reported the entire $7,020 as income on his 1951 return. In 1952, petitioner paid one-half of said dividend to Eichinger. The amount of this payment, less a sum referred to as an interest reimbursement received by Herman, is claimed by him as a miscellaneous deduction for 1952. The year 1951 is barred by the statute of limitations. Held: That petitioner may not offset an erroneous inclusion of income in 1951 by adjusting his return accordingly in a subsequent year. 3. Held: For failure of proof of error by petitioner respondent's determination as to additions to tax under sec. 294(d)(1)(A) of the 1939 Code for the taxable year 1954 and sec. 294(d)(2) of the 1939 Code for the years 1952 and 1953 are approved. Maurice Weinstein, Esq., 623 N. Second St., Milwaukee, Wis., for the petitioners. Delman H. Eure, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This consolidated *114 proceeding involves deficiencies in income taxes and additions to tax determined against petitioners as follows: Additions to Tax
Sec.
Docket
Defi-
294(d)
Sec.
No.
Year
Ciency
(1)(A)
294(d)(2)
75409
1947
$ 2,814.52
1948
4,101.12
1949
7,932.77
1950
5,404.54 a
78178
1952
12,804.80
$ 670.26
1953
11,569.66
1,250.26
1954
13,171.28
$2,422.15
1,050.58 a
1955
14,888.28
The issues to be decided are: (1) Whether petitioners are subject to tax on the income credited to three trusts allegedly created by Herman Paster; (2) whether petitioners sustained a loss or incurred an expense which was deductible for the year 1952 with respect to an alleged payment to Fritz Eichinger; and (3) whether petitioners are liable for additions to tax under section 294(d)(2) of the 1939 Code for the years 1952 and 1953 and section 294(d)(1)(A) for the year 1954. Findings of Fact Issue I. Paster Trusts Some of the facts are stipulated and are incorporated herein by reference. *115 Petitioners, Herman and Celia Paster, are husband and wife and during the periods in question resided at 1752 Pinehurst Avenue, St. Paul, Minnesota. They filed joint Federal income tax returns, using a cash basis method of accounting, with the collector of internal revenue for the years 1947, 1948 and 1949, and with the director of internal revenue, St. Paul, Minnesota, for the years 1952 through 1955, inclusive. Celia is named a petitioner herein only because she filed a joint return with Herman for the years involved. Herman Paster (hereinafter sometimes called petitioner or Herman) is the same individual as the taxpayer in Paster v. Commissioner, 245 F. 2d 381 (C.A. 8, 1957), certiorari denied 355 U.S. 876 (1957) affirming a Memorandum Opinion of this Court. During the years involved herein, Herman was engaged in the operation of about 12 businesses, all located on the same premises. Two of these businesses were Paster Enterprises and Progress Finance. Paster Enterprises is a partnership consisting of Herman and Celia Paster as partners. It is engaged in the business of owning and renting commercial and residential properties. Progress Finance is a corporation all of the stock *116 of which is owned by petitioner. It is engaged in the business of purchasing or discounting conditional sales contracts and other commercial paper. Both businesses were controlled by Herman. Walter Johnson was employed by petitioner in 1946 as an accountant and bookkeeper for his business and personal affairs. On December 29, 1942, petitioner executed three instruments designated "Trust Agreement for the Benefit of Celia Paster," "Trust Agreement for the Benefit of Donald Joseph Paster," and "Trust Agreement for the Benefit of Edward Jacob Paster." Except for the designation of the beneficiaries and the dates of termination, these three instruments are identical. They are the same instruments considered in Paster v. Commissioner, supra. Manley Frisch (now deceased), an attorney, drafted said indentures. Donald Joseph Paster and Edward Jacob Paster are sons of Herman and Celia. Donald was born about 1940 and Edward in 1942. Herman Paster and Sam Walzer were named as trustees in each of the three aforesaid agreements. Walzer, who died in 1955, was petitioner's brother-in-law. The Paster trust agreements provided, inter alia, as follows: * * *
3. The Trustees shall have full power at *117 all times and from time to time to sell, convert, reconvert, partition or exchange any property at any time comprising a part of the trust fund, or any part or parts, thereof, or any claim or interest that he may have in any such property, and to make, execute and deliver all such instruments as they may deem necessary or expedient for such purpose, and to make such contracts with reference to the said trust fund, or any part thereof, as they may see fit. The Trustees may retain and hold without incurring any liability in so doing, any property or securities which may have been delivered to the Trustees by the Donor hereunder, or which may have been obtained by the direction of the Donor. 4. The Trustees are hereby authorized and empowered to receive, hold, manage, protect, sell, invest and reinvest any and all of the property comprising this trust to collect, recover, and receive the income thereof and therefrom and to pay out all amounts necessary to the proper conduct or administration of this trust. The Trustees are hereby authorized and empowered to sell or otherwise dispose of, at such times and upon such terms and conditions as they shall deem proper or expedient, any and all *118 of the securities and/or property which shall at any time constitute a part of the corpus of this trust; and the Trustees are hereby similarly authorized and empowered to invest and reinvest the funds and securities which shall at any time constitute a part of the corpus of this trust as in their judgment may seem wise and proper, whether or not such investments are now or may hereafter be authorized by law for trust investments. The Trustees shall not be responsible for any loss or damage which may result from the exercise of judgment or discretion in carrying out the provisions of this agreement, nor for any moneys or property except such as shall actually and in fact come into their possession by virtue of the provisions hereof. The trust agreements provided that the trustees should distribute annually to the beneficiaries at least 15 percent of the income of the trust and that the remaining 85 percent of the income could be distributed or retained in the corpus of the trust in the trustees' discretion. The trust agreements also provided that in the event of the death or disability of the trustees the District Court of the County of Ramsey, State of Minnesota, should have the sole *119 right to name the successor trustee as in the discretion of the court should appear just and proper. The trust agreements contained provisions against the assignments, encumbrance, or anticipation of income by the beneficiaries. In the event of an attempt by a beneficiary to assign or encumber, or the like, or in the event of bankruptcy or judgment, levy of execution or similar circumstance, the trustees were given the discretion to apply directly to maintenance and support of the beneficiary any amount or amounts which could have been distributed to such beneficiary or his family. The trust agreements also provided that the trusts were declared and intended to be "irrevocable" by the settlor, and that they were not capable of modification in any manner, except as specifically authorized and directed by the trust agreements. The trust indentures provided that in the case of Donald Joseph and Celia the trusts would terminate on November 18, 1960, at which time all funds, both principal and accrued income then in the hands of the trustees of their respective trusts, were to be paid over to the beneficiaries. In the case of Edward Jacob said trust was to terminate on August 22, 1962, *120 and he was to receive all funds therefrom. Each of the trust agreements provided for the transfer by Herman to himself and Walzer, as trustees, as follows: A Ten Thousand ($10,000.00) Dollar interest in the proceeds due Herman Paster as earnings for services rendered to the Mayflower Novelty Company of St. Paul, Minnesota, and now held by the Mayflower Novelty Company. Mayflower Novelty Company (hereinafter sometimes referred to as Mayflower) was a partnership of which Herman was general manager from 1937 until 1946. Johnson was also employed by Mayflower. In 1942, Mayflower was indebted to Herman in the approximate amount of $50,000. Herman designated $30,000 of said amount, or $10,000 each, as corpus of the three trusts mentioned above. The $30,000 was retained by Mayflower with the understanding that the three trusts should receive a percentage of the profits of that company. Likewise, said profits were retained by Mayflower, being accrued and credited on its books to an account for the trusts. Prior to 1947, Mayflower held the complete corpus of the trusts. The taxability of the accrued profits of Mayflower credited to the trusts for the years 1944, 1945, and 1946 was the subject *121 of the previous Paster case. The income was held taxable to Herman. In 1946, Herman purchased Mayflower, acquiring all of its assets and assuming all of its liabilities including the amounts shown on its books to be due to the three Paster trusts. As of December 31, 1946, the books of Mayflower showed a debt due the trusts in the total amount of $110,735.41. Said amount represented the original $30,000 due Herman which he had designated as the corpus of the trusts, plus the portion of the net profits of Mayflower which had accrued and had been credited on its books to the accounts maintained for the trusts. According to the records of the trusts, the assets as of December 31, 1946, consisted of the $110,735.41 due on the Mayflower account and $17,188.56 in United States Series E bonds. The same records show a liability to Herman in the amount of $7,047.01. According to the books of the trust, Herman, after assuming the liabilities of Mayflower on January 1, 1947, partially satisfied the amount due the trusts by the cancellation of the sum due him and by the assignment of securities and equities in real estate as follows: Debits - Mayflower Account
$110,735.41
12/31/46
Credits
Balance due Herman Paster
$ 7,047.01
12/31/46
Securities
8,461.44
Equity in Real Estate
2171 Grand Avenue
$ 75,000.00
2175 Grand Avenue
75,000.00
1752 Pinehurst
23,000.00
Total equity in real estate
$173,000.00
Less: Depreciation Reserve
2171 Grand Avenue
$ 1,800.00
2175 Grand Avenue
1,800.00
2171 Grand Avenue - Mtge.
29,033.36
2171 Grand Avenue - Cont.
13,883.42
for Deed
2175 Grand Avenue - Mtge.
21,123.59
2175 Grand Avenue - Cont.
16,625.00
for Deed
84,265.37
88,734.63
104,243.08
Balance due trust
$ 6,492.33
The *122 securities referred to above as assigned to the trusts consisted of United States Series E bonds. The equities in real estate referred to above as assigned to the trusts and designated 2171 and 2175 Grand Avenue are two residential apartment buildings situated in Ramsey County, Minnesota. The real estate that is designated 1752 Pinehurst is petitioners' personal residence. Prior to April 1944, one of the two apartment buildings and the land on which they were situated were owned by Adolph S. and Sally Fine, and the other by Adolph S. and Sally Fine, Ruth and Arnold Resnick, and Gerald Fine. On April 25 and 29, 1944, these parties executed a contract for deed of the property to S. Paul and Tillie Johnson. In December 1945, S. Paul and Tillie Johnson executed two contracts for the sale of the apartments to Celia Paster and two assignments to Celia of the contracts for deeds to the property for a total consideration of $150,000. On May 24, 1950, two warranty deeds showing transfer of the title to the apartment properties to Celia were filed with the Register of Titles for Ramsey County, Minnesota. In 1947, Johnson, the accountant, commenced keeping books for the Paster trusts. Said books *123 consisted of a single journal and a single ledger. Prior to that time the records of income credited to the trusts were kept on the books of Mayflower by Johnson. During 1947 Herman directed Johnson to act as trustee in his stead. Under this authority Johnson thereafter and throughout the period in question handled many of the trusts' affairs. According to balance sheets of the trusts as of December 31, 1947, the assets and liabilities of the trusts consisted of the following: ASSETS
December 31, 1947
Securities
$ 33,150.00
Loans Receivable
302.85
Real Estate
173,000.00
Prepaid Insurance
649.71
Total
$207,102.56
LIABILITIES AND CAPITAL
Liabilities
Loans Payable
$ 3,954.86
Contract for Deed
25,278.46
Mortgage Payable
45,385.02
Reserve for Depreciation
7,200.00
Unearned Rents
Accrued Payable Taxes
Capital
Celia Paster Trust
$ 42,859.10
Donald Paster Trust
41,014.48
Edward Paster Trust
41,410.64
Total
$207,102.56
The securities shown in the December 31, 1947, trusts' books in the amount of $33,150, set forth above, consisted of United States Series E bonds. The bonds matured in 1949 at which time they were cashed and the proceeds turned over to Progress Finance. Until their maturity the securities were kept in a safe *124 located on Herman's business premises. The loans receivable item ($302.85) shown in the December 31, 1947, balance sheet consisted of amounts due from Paster Enteprises. This item was eliminated in 1948. In 1949 the Series E bonds shown as assets on the trusts' books matured and were cashed. The proceeds were turned over to Progress Finance and entered on the books of the trusts as loans receivable. In 1950 mortgages on the two apartment buildings on Grand Avenue were refinanced and the proceeds received turned over to Progress Finance and Paster Enterprises. This transaction was reflected on the trusts' books as an increase in the loans receivable and mortgages payable accounts. Other increases in the loans receivable item carried on the trusts' books represented accumulations of interest on the loans. All of the loans shown as assets of the trusts on the trusts' books were receivable from Progress Finance and Paster Enterprises. The real estate item shown in the December 31, 1947, trusts' balance sheet consisted of petitioners' personal residence and two apartment buildings on Grand Avenue purchased in the name of Celia Paster. On October 28, 1953, a bank account was established *125 in the name of the trusts with a deposit of $22,100 received from Paster Enterprises. On the same date said amount was withdrawn from the trust account and deposited in the bank account of Progress Finance. This transaction represented a transfer of funds from Paster Enterprises to Progress Finance. The books of the trust do not reflect any cash on hand in banks until 1954. The balance of cash on hand as of December 31, 1954, was $534.98, and as of December 31, 1955, was $1,598.69. The income credited on the trusts' books of account consisted of the gross rentals collected from the two apartment buildings, interest accrued on the loans to Paster Enterprises and Progress Finance, and miscellaneous amounts from other sources. The expenses recorded on the trusts' books consisted of, among other items, fuel, maintenance salaries, and legal and management fees incurred with respect to operating the apartments. The two apartment buildings were managed by Johnson. He collected the rents and paid the expenses. As most of the tenants occupied the apartments on a month-to-month basis, no leases were required. The apartment rentals collected by Johnson for the periods in question were deposited *126 in the bank account of Paster Enterprises. Checks would then be drawn on said account for payment of expenses incidental to renting the apartments. The management and maintenance fees and salaries shown as rental expenses on the books of the trust were paid to Paster Enterprises. The balance remaining after payment of the expenses was retained in the bank account of Paster Enterprises. No interest income was recorded on the books of the trusts prior to 1950. The interest recorded thereafter was that accrued on the accounts designated "loans receivable" from Progress Finance and Paster Enterprises with the exception of $17.50 in 1954 pertaining to Israel Bonds. The interest that accrued on the loans receivable was not paid to the trusts, but was accrued and accumulated on the books of Paster Enterprises and Progress Finance. The interest income accrued on the loans receivable on the books of the trusts is summarized as follows: PASTER TRUSTS
Interest Income
Dec. 31,
Dec. 31,
Dec. 31,
Source
1950
1951
1952
Progress Finance 10%
$3,824.17
$3,912.43
$4,303.67
Paster Enterprises 8%
2,800.00
3,176.41
3,085.39
Israel Bonds
$6,624.17
$7,088.84
$7,389.06
PASTER TRUSTS
Interest Income
Dec. 31,
Dec. 31,
Dec. 31,
Source
1953
1954
1955
Progress Finance 10%
$4,734.04
$6,654.11
$7,992.86
Paster Enterprises 8%
1,831.31
678.56
None
Israel Bonds
17.50
$6,565.35
$7,350.17
$7,992.86
The *127 only withdrawals of funds credited to the trusts were for the payment of income and real estate taxes and insurance premiums. These withdrawals included payments of real estate taxes on petitioners' personal residence at 1752 Pinehurst Avenue. No cash distributions were made to the designated beneficiaries. The net assets of the Paster trusts during the years 1942 through 1955, inclusive, are summarized as follows: PASTER TRUSTS
Application of Funds
1942 to 1955, inclusive
RECEIVED FROM
Original Trust Fund 1942
$ 30,000.00
Income - 1943 to 1955,
inclusive
$243,877.44
Less withdrawal
65,084.26
178,793.18
Total corpus and accumulated
income
$208,793.18
APPLIED TO
Assets
Real Estate
$192,993.13
Less Depreciation
37,399.07
$155,594.06
Loan receivable
97,938.30
Cash
1,598.69
Securities
200.00
Prepaid insurance
140.93
$255,471.98
Less indebtedness
46,678.80
NET ASSETS December 31,
1955
$208,793.18 During the periods in question the following amounts of net income were credited on the books of the three trusts: Celia Paster
Donald Paster
Edward Paster
Year
Trust
Trust
Trust
Total
1947
$2,203.63
$2,203.63
$ 4,407.26
1948
4,168.05
4,168.05
8,336.10
1949
4,304.24
4,304.24
8,608.48
1952
$2,508.15
6,160.21
5,702.48
14,370.84
1953
2,758.96
5,977.34
5,977.34
14,713.64
1954
3,369.06
6,874.19
6,891.68
17,134.93
1955
4,093.24
9,079.55
9,132.06
22,304.85
During *128 the years in question, income credited to the trust for the benefit of Celia Paster was reported in the joint Federal income tax returns filed by petitioners as follows: Year
Income Reported
1947
1948
1949
1952
$1,534.35
1953
1,230.62
1954
2,033.72
1955
1,396.03
During the period in question no income was reported on petitioners' Federal income tax returns with respect to the income credited to the trusts for the benefit of Donald Joseph and Edward Jacob Paster. On April 30, 1958, pursuant to a petition filed with the Ramsey County Minnesota District Court, Walter Johnson and Irving Shaw were named co-trustees under the Paster trust instruments. On December 16, 1958, two deeds were executed by Herman and Celia Paster; one transferred an undivided one-half interest in each of the two apartments to the trust for the benefit of Donald Joseph Paster and the other transferred an undivided one-half interest in each of the apartments to the trust for the benefit of Edward Jacob Paster. Said deeds (which are identical except for the named beneficiary) stated, in part, as follows: BE IT KNOWN That Parcel No. 1 was by Contract for Deed dated April 29, 1944, sold and conveyed by Adolph S. Fine and Sally Fine, *129 his wife, as vendors to S. Paul Johnson and Tillie Johnson, his wife, as vendees; that on December 4, 1945, S. Paul Johnson and Tillie Johnson, his wife, by Contract for Sale of real estate did agree to sell and convey their interest in said Parcel No. 1 to Celia Paster and on December 18, 1945 did by Assignment of Contract for Deed assign to said Celia Paster their interest in the Contract for Deed referred to above. That Parcel No. 2 was by Contract for Deed dated April 25, 1944 sold and conveyed by Adolph S. Fine and Sally Fine, his wife, Ruth Resnick and Arnold Resnick and Gerald M. Fine, unmarried, as vendors to S. Paul Johnson, and Tillie Johnson, his wife, as vendees; that on December 4, 1945, S. Paul Johnson and Tillie Johnson, his wife, by Contract for Sale of real estate did agree to sell and convey their interest in said Parcel No. 2 to Celia Paster and on December 18, 1945, did by Assignment of Contract for Deed assign to said Celia Paster their interest in the Contract for Deed referred to above. That Celia Paster did on January 31, 1946, assign, transfer and set over unto the Donald Joseph Paster Trust, being a Trust created under the Trust Agreement, dated December *130 29, 1942, by Herman Paster for the benefit of Donald Joseph Paster an undivided one-half (1/2) interest in and to the then outstanding Contracts for Deed covering said Parcels 1 and 2 and did on January 31, 1946, assign, transfer and set over unto the Edward Jacob Paster Trust, being a Trust created under the Trust Agreement dated December 29, 1942, by Herman Paster for the benefit of Edward Jacob Paster an undivided one-half (1/2) interest in and to the then outstanding Contracts for Deed covering the said Parcels 1 and 2. That said Trusts above referred to did subsequent to January 31, 1946 make all of the payments required to be paid under the said Contracts for Deed and on May 24, 1950 completed payment of the balance in full, at which time said Trusts were entitled to deeds conveying to each of said Trusts an undivided one-half (1/2) interest in the title to the property hereinabove described. That through mistake, inadvertence and oversight conveyance of Parcel No. 1 was made to Celia Paster by Warranty Deed dated May 18, 1944 and filed of record with the Registrar of Titles in and for Ramsey County, Minnesota on May 24, 1950 in Book 316, Page 109 and through mistake, inadvertence *131 and oversight conveyance of Parcel No. 2 was made to Celia Paster by Warranty Deed dated May 18, 1944 and filed of record with the Registrar of Titles in and for Ramsey County, Minnesota on May 24, 1950 in Book 316, Page 110. That by reason of the aforesaid, this conveyance is made for the purpose of vesting an undivided one-half (1/2) interest in the title to said property hereinabove described to Irving Shaw and Walter D. Johnson, co-trustees of the trust created under the Trust Agreement dated December 9, 1942 by Herman Paster for Donald Joseph Paster, the true owner thereof. Issue 2. Miscellaneous Deduction ($2,087.50) On their Federal income tax return for the taxable year 1952 petitioners claimed a miscellaneous deduction in the amount of $2,087.50 computed as follows: SCHEDULE OF JOINT VENTURE WITH
FRITZ EICHINGER, ST. PAUL, MINNESOTA,
IN STOCK OF TWIN CITY RAPID
TRANSIT CO.
Purchases - 6400 shares from 1/19/51
to 2/27/51 - total cost
$ 84,128.34
Sold from 8/1/52 to 10/9/52
4600 shares - cost
$ 60,728.34
Selling price
39,990.69
Total long-term capital loss
[20,737.65)
1/2 share to Herman Paster Loss
(10,368.83)
MISCELLANEOUS DEDUCTIONS
(relating to above venture)
On 1951 return, taxpayer included as
dividend income from Twin City
Rapid Transit Co.
$ 7,020.00
of which amount, payment was
made to Fritz Eichinger in 1952
of 1/2
3,510.00
Deduction claimed by taxpayer
$ 3,510.00
On 1951 return taxpayer deducted
interest paid to Midway Nat'l
Bank, St. Paul, in connection with
this venture of $2,845.00.
In 1952 Fritz Eichinger reimbursed
taxpayer for 1/2 of interest
1,422.50
$ 2,087.50
Issue *132 3. Additions to Tax By the execution of Forms 872, the period of limitations for assessment of taxes of Herman and Celia Paster for the years 1947, 1948, and 1949 were extended to June 30, 1958, pursuant to the provisions of section 276(b) of the Code of 1939, and the period of limitations for assessment of taxes for the years 1952, 1953, and 1954 were extended to June 30, 1959, pursuant to the provisions of section 276(b) of the Code of 1939 and section 6501(c) of the Code of 1954. The period for assessment of taxes for the year 1950 expired on March 15, 1954. The statutory notice of deficiency pertaining to the years 1947 through 1950, inclusive, was mailed to petitioners on May 22, 1958. The statutory notice of deficiency pertaining to the years 1952 through 1955, inclusive, was mailed to petitioners on October 7, 1958. Opinion Issue 1. Paster Trusts Respondent's position on the principal issue is that the income credited to the trusts involved is taxable to petitioners under three separate theories: (1) No valid trusts were created for income tax purposes; (2) if valid trusts were created, for practical purposes and within the meaning of sections 166 and 167[1] *134 of the 1939 Code, *133 and sections 675 and 676[2] *135 of the Code of 1954, they were "revocable" and the income distributable to petitioners; and (3) petitioners "retained" and exercised such administrative control over the trusts as to render them taxable on the income under the Clifford regulations and corresponding provisions of the 1954 Code. Petitioners, in opposition, contend that three bona fide irrevocable trusts were created which were administered solely for the benefit of the cestuis que trusts for the entire term of said trusts; that the trust indentures do not contain any of the proscribed powers referred to in the aforesaid statutes; and that the doctrine of Helvering v. Clifford, 309 U.S. 331 (1940) was fully complied with. For reasons hereinafter discussed, we agree with respondent. Preliminarily, we note that in 1942 Herman Paster executed *136 three trust instruments for the benefit of his wife and children. In essence, said indentures provided that the corpus would be an interest in certain proceeds ($30,000) due Herman as compensation from the Mayflower Novelty Company. These amounts were retained by Mayflower and used in its business with the understanding that the trusts would receive a share of the profits of the business. Thereafter, various amounts were entered on the company books as due the trusts. These amounts were not paid over to the trusts but were retained in the business. Subsequently, the issue of whether Herman was subject to tax on the profits thus credited to the trusts for the years 1944 through 1946, inclusive, was adjudicated in Herman Paster v. Commissioner, supra. Deciding adversely to petitioner and relying on the Clifford line of cases, the Court of Appeals concluded, inter alia, that the proof was without dispute that the corpus of the alleged trusts belonged to Herman. The court further accepted the view that he had "complete dominion and control, with all the attributes of ownership, over these so-called trust funds" and that insofar as the trust records purported to show that the profits from *137 Mayflower were income to the trusts, the records were "shams and did not reflect the facts." Again, in the instant trial, respondent's principal contention is that for Federal income tax purposes, no valid trusts were created subsequently, that is, in 1947, or during any of the taxable years involved. Essentially, it is respondent's position that there was no significant change in the facts or circumstances found from those in the earlier Paster case. He avers that petitioner maintained and continued to exercise complete dominion and control over the alleged corpus and income of the trusts, and, hence, that petitioner earned and is properly taxable on the income credited to the trusts. The burden of proof is upon the petitioners to demonstrate that respondent's determination is erroneous. Herman Paster v. Commissioner, supra, p. 384; Morsman v. Commissioner, 90 F. 2d 18, 23 (C.A. 8, 1937), certiorari denied 302 U.S. 701 (1937). It is axiomatic that the statutes relating to trusts are concerned only with genuine trusts. Moreover, the word "trust" as used in the revenue acts is more limited in its application than the broad meaning of that term as sometimes used in equity. In Stoddard v. Eaton, 22 F. 2d 184, 186 (1927) *138 (D.C.D. Conn.), the court held that Congress did not use the word "trust" in section 219 of the early acts as comprehending every type of trust recognized in equity. A trust ex maleficio, a resulting trust or a constructive trust, was cited by the court as examples of trusts which did not fit into the framework of the revenue statutes. And the court specifically stated: "A trust, as therein understood, is not only an express trust, but a genuine trust transaction. A revenue statute does not address itself to fictions." Stated simply, the grantor's mere use of the word "trust" in the agreement cannot be relied upon as determinative of whether or not a trust was actually created. The important consideration is not the formalities (however meticulously observed) in which the parties cast their transactions, but, rather the substance of such arrangements, including the motives prompting creation, the relation of the parties, and other circumstances surrounding the transaction. Substance and not form controls in applying income tax statutes and "the realities of the taxpayer's economic interest rather than the niceties of the conveyancer's art should determine the power to tax." Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 58 (1942); *139 Morsman v. Commissioner, supra, pp. 779-780. Petitioner's misconception of the principles here involved is indicated by his reliance on brief upon a quotation from Scott on Trusts, Section 2.3, pp. 36-37, defining a trust from the perspective of the general equity concepts. A fundamental element in the creation of a valid trust is that there be a trust res. The books kept by Johnson, petitioner's accountant, who allegedly had been taking care of trust affairs since 1947, purport to show that on January 1, 1947, the day after the period previously considered by us in Paster v. Commissioner, supra, petitioner transferred certain real estate and securities to the trusts, and appropriate entries were made. These book entries were essentially the only affirmative evidence adduced to establish said transaction. Johnson, on direct examination, testified that his only information concerning the circumstances of the transfer was that shown on the books. Likewise, Herman, the only other witness called, displayed no greater knowledge of the underlying facts. Bookkeeping entries, though of some evidentiary value, are not conclusive. Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918); Paster v. Commissioner, supra, p. 388; *140 Tyson v. Commissioner, 146 F. 2d 50 (C.A. 8, 1944), affirming a Memorandum Opinion of this Court. We believe that the affirmative evidence of record and the inferences to be drawn therefrom support the view that the bookkeeping entries were a mere contrivance made in an attempt to attribute income to a source other than its creator. In any event, petitioner, bearing the burden of proof, has offered no acceptable evidence of their bona fides. One category of assets shown on the trusts' books to have been transferred to the Paster trusts, consisted of equities in real estate which included the personal residence of petitioners. No documentary evidence, such as a title or deed, was introduced to substantiate the claim that such a conveyance to the trusts was actually made on December 31, 1946, as petitioner contends. Petitioners continued to occupy the personal residence involved throughout the years in question and there is no evidence that Herman paid any rent for its use or that the residence produced any other income credited to the trusts. The real estate interests allegedly conveyed to the trusts also included two apartment buildings. The trust books purport to show that said property *141 was transferred to the trusts by Herman in his individual capacity on December 31, 1946. The preponderance of the evidence before use, however, shows that they were purchased by Herman in the name of his wife, Celia, in 1945 and that Celia held them in her name at least until December 1958, at which time Herman joined her in executing deeds to the trusts. In any event, there was no transfer of record of the apartment houses to the trusts prior to December 1958, and under the laws of the State of Minnesota, the purported conveyances of the real estate to the trusts could not have become effective until recorded as such in December 1958. Minn. Stat. Ann. sec. 513.04. [3] *142 True, an owner of property may declare himself trustee thereof where he complies with the local laws of conveyance. Becker v. St. Louis Union Trust Co., 296 U.S. 48 (1935), affirming, 76 F. 2d 851 (C.A. 8, 1935). We need not consider, however, whether under the laws of Minnesota a conveyance of real estate by one person to another on a verbal declaration of trust under the circumstances present in the instant case would be valid or void, (see In Re Ryan's Estate v. Williams, 92 Minn. 506 (1904) 100 N.W. 380-381; Luce v. Reed, 63 Minn. 5, 65 N.W. 91-92 (Supreme Court of Minnesota, 1895)) since in the case before us there is no evidence that an oral declaration of trust was made as to the apartment house properties. In the main, petitioner argues that through "inadvertence" there were no written assignments of the contracts of deeds executed by Celia to the trusts; and that this oversight was not discovered until December 16, 1958, at which time the supposed inadvertence was corrected by the execution and recordation of two deeds by Celia to the trusts, which deeds purported to explain the reason for the failure to execute the deeds in 1947. It is readily apparent *143 that the self-serving declaration contained in the 1958 deeds, supra, was prepared for the instant trial and is inadequate to prove the alleged earlier transaction. [4] *144 Moreover, this recitation in the deeds is inconsistent with the trusts' books, which indicate that the apartments were transferred in part satisfaction of the liability of Mayflower, i.e., $110,735.41, which had been assumed by Herman. There was no segregation of this sum between the capital accounts of the three trusts and there was no subsequent segregation of the real estate, including the personal residence, among the capital accounts. It is to be noted, also, that the deed contains a statement that the property was transferred to the trusts for Donald Joseph and Edward Jacob Paster only, and no interest in the properties was deeded to the Celia Paster trust. We need not speculate as to whether this represented a hindsight approach for tax purposes since we hold that the income is to be attributed to Herman. Furthermore, we note that the aforesaid apartment houses were acquired by Celia under contracts for the sale of real property and assignments of contracts for deeds and as part of the consideration she assumed and agreed to pay mortgages on the property and amounts due under the contracts. The trusts' books show that the property was transferred to the trusts subject to these obligations. However, there is no record to establish that the trusts ever made payments on these obligations, although the amounts shown to be due on the trust balance sheets are periodically reduced. The income credited to the trusts after the payment of current expenses and withdrawals is shown for each year as an increase in the capital accounts. Significantly, the current expenditures do not include payments on the mortgages or contracts. The withdrawals were for income and real estate taxes and insurance premiums only. No cash was received by the trusts prior to 1954 and they had no bank account prior to 1953. *145 In the absence of any convincing evidence, we have no basis for inferring that the mortgage payments were made by the trusts rather than by Herman or Celia, or one of the Paster businesses. All rents collected from the apartment buildings were deposited in the bank account of Paster Enterprises and all of the rental expenses were paid from this account. Paster Enterprises is a partnership engaged in the business of owning and leasing real estate and petitioners are the partners. The aggregate annual net income from rents and interest of the trusts from January 1, 1947, to December 31, 1955, was in the amount of $119,254.71. The net rentals were retained by Paster Enterprises. Obviously, there was no effective transfer of the apartment buildings to the trusts until 1958. Not only was title to the property retained in Celia's name, but the partnership had complete control and unfettered use of the income from properties in their real estate business. Where the taxpayer, as here, maintains that the formalities of conveyance were neglected through mistake and seeks to establish retroactively a legally defective or parol transfer of property in trust, we think that any uncertainty or omission *146 is of his own making and doubts may fairly be resolved against him. See Louis J. Reizenstein, 22 T.C. 843, 847 (1954). In our opinion, the trusts, if any existed, are not to be recognized for Federal income tax purpose with respect to the apartment house properties at least until after the execution of the deeds in December of 1958. See Benjamin F. Wollman, 31 B.T.A. 37 (1934); Oscar Mitchell, 27 B.T.A. 101, 104 (1932). Celia, (one of the petitioners herein) who may have shed some light on the true nature of the transaction involved, was not called as a witness by Herman, nor was her absence explained. We cannot assume that her testimony, if presented, would have been favorable to their position. Meier v. Commissioner, 199 F. 2d 392, 396 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court. The second category of income-producing assets reflected on the trusts' books were loans receivable from Paster Enterprises and Progress Finance. Progress Finance is a wholly-owned corporation of Herman engaged in the business of purchasing and discounting commercial paper. On December 31, 1946, Herman satisfied, in part, the liability to the trusts which he had assumed for Mayflower *147 by the transfer of United States Series E bonds to the trusts. When the bonds matured they were cashed and the proceeds turned over to Paster Enterprises and Progress Finance. These proceeds were recorded on the trusts' books as loans receivable. In 1950 the mortgages on the real property were refinanced and the funds received were also turned over to the two Paster businesses. Other increases were attributable to accumulations of interest accruing on the loans. No interest income was recorded on the trusts' books for the years 1947 through 1949, when the bonds were cashed. With the exception of a nominal sum shown for 1954, (Israel Bond, $17.50) all of the interest income in question arose with respect to the loans receivable from Paster Enterprises and Progress Finance. These amounts were not paid over to the trusts or otherwise segregated from the general assets of those businesses, but were retained by the latter and accumulated as additional loans. The manner in which they were carried on the books of said businesses is not shown. In the case of the apartment and rental income, petitioners and their businesses had complete dominion over and uncontrolled opportunity to use the *148 funds. In this connection it is noteworthy that on October 28, 1953, a bank account was established in the name of the trusts with a deposit of $22,100 received from Paster Enterprises. On the same date said amount was withdrawn from the trust account and deposited in the bank account of Progress Finance. Petitioners argue, on brief, that $65,084.26 was distributed to the beneficiaries or for their benefit. While the books show "withdrawals" totaling that amount over a period of years, it is apparent that the withdrawals did not represent distributions, but were, at least, in the main, payments for various obligations not detailed in the evidence Johnson stated that there may have been a "few small" cash distributions to the beneficiaries. None of the beneficiaries testified as to the extent of the cash distributions or the disbursements which were allegedly made in their behalf. Apart from the characterization of the amounts as trust assets on the books of the trusts, there is no affirmative evidence of transfers of cash to the trusts or cash distributions to the beneficiaries. Viewing the situation realistically, we do not believe that valid trusts, as recognized by the internal *149 revenue laws, existed during the years in issue. The only apparent changes from the situation considered in the earlier Paster case were inconsequential, consisting mainly of additional bookkeeping entries which indicated that there had been a change in the nature of the assets regarded as corpus. The apartment buildings were not transferred to the trusts during the years at issue, and the remaining purported assets and alleged accumulated income were subject to the control of petitioner and made use of by him, directly or indirectly, through Paster Enterprises and Progress Finance. Referring again to the real estate, the trust books indicate an unsegregated transfer to the three trusts in 1946, but in 1958 when there was an actual formal transfer, the grantees were only the two trusts for the children. It is also clear that petitioner, directly or indirectly, borrowed from the trusts at will and there is no evidence that adequate security was provided. In Tyson v. Commissioner, 146 F. 2d 50 (C.A. 8, 1944), affirming a Memorandum Opinion of this Court, the taxpayer likewise executed several trust indentures each of which purported to transfer irrevocably a sum of cash to his wife *150 in trust for the benefit of a minor child. The trustee was empowered to invest the funds in businesses in which the taxpayer-grantor was interested. [5] At the same time, a contract was executed under which the trustee was to loan the money to one of the taxpayer's businesses and receive a share of its profits. No money was in fact ever delivered to the trustee or by the trustee to the business. Book entries, however, evidencing the alleged transactions were made and shares of net income were credited to the accounts as being due the trusts. None of this income was distributed or withdrawn for any purpose. The Court of Appeals concluded that since the taxpayer-grantor had not made any valid and completed gifts in connection with the trusts nor stripped himself of the ownership and control of any trust res, the income of the alleged trusts was taxable to him. Petitioners, *151 on page 6 of their reply brief, aver that the purpose of the trusts was to reduce income tax. Of course, we recognize that taxpayers have the right to avoid or decrease the amount of their income taxes by any means which the law permits. We may look at actualities, however, and if the transaction is found to be in substance a mere subterfuge, device, or contrivance for the avoidance of taxes, its form will be disregarded for taxation purposes. An arrangement or transaction which is in effect only a sham designed to shift income from the taxpayer to a near relative without any significant change in the taxpayer's economic status, cannot be permitted to stand. Tyson v. Commissioner, supra, p. 54; Morsman v. Commissioner, supra, p. 22. We have not considered the prior Paster case as controlling of the issue herein, and we have reached our conclusion on our own analysis of the particular facts and principles of the applicable law. Our view, based upon the foregoing discussion, is that the trusts were shams which are not to be recognized as valid and subsisting for income tax purposes and that respondent properly attributed the income in question to petitioners. Since it appears to us *152 to be clear that respondent must be sustained on his first contention, which we have discussed very fully, we think it would unduly protract this opinion to discuss his second and third contentions, except to add that even a casual consideration of the third contention, based in many material respects upon the same facts as the first, demonstrates that petitioner retained and exercised such complete control over the corpus and income of the trusts that the income must be attributed to him on the authority of principles so consistently and repeatedly expressed by the courts that a summarization here is unnecessary. Helvering v. Clifford, 309 U.S. 331 (1940); Doll v. Commissioner, 149 F. 2d 239, 244 (C.A. 8, 1945), certiorari denied 326 U.S. 725; Louis Stockstrom, 4 T.C. 5, (1944) affd. 151 F. 2d 353, 355 (C.A. 8, 1945); George v. Commissioner, 143 F. 2d 837, 839 (C.A. 8, 1944), affirming a Memorandum Opinion of this Court; Archibald G. Bush, 43 B.T.A. 535, 540 (1941), affd. 123 F. 2d 242 (C.A. 8, 1941); Funsten v. Commissioner, 148 F. 2d 805 (C.A. 8, 1945); and Edison v. Commissioner, 148 F. 2d 810, 814 (C.A. 8, 1945), both affirming a Memorandum Opinion of this Court. Issue *153 2 Miscellaneous Deduction ($2,087.50) Petitioner contends that prior to 1951, Herman and Fritz Eichinger jointly purchased some stock in the Twin City Rapid Transit Co.; that in 1951 Herman received dividends on said stock in the amount of $7,020, one-half of which belonged to Eichinger; and that Herman did not pay Eichinger his share but inadvertently reported the entire $7,020 as income on his 1951 return as his income. He also contends that in 1952 he paid interest in the sum of $2,845 to the Midway National Bank, St. Paul, Minnesota, in connection with his stock purchase, of which $1,422.50 was chargeable to Eichinger; and that in 1952 he paid Eichinger his share of the dividends in the amount of $3,510, less the aforesaid $1,422.50. He urges that since he paid Eichinger the total amount of $2,087.50 during the taxable year 1952, he is entitled to a miscellaneous deduction of said amount during that year. We disagree. It is well settled that the income tax is imposed on an annual accounting period (with exceptions not here material). The fact that income is erroneously reported for one year furnishes no basis for an offsetting deduction in a subsequent year to which such deduction *154 is not otherwise attributable. Were we to permit the taxpayer to offset in a later year an erroneous inclusion of income in a previous year, he could select the year of deduction to his tax advantage. The taxpayer's primary remedy in such a situation is to file an appropriate claim for refund. The fact that the claim is barred by the statute of limitations, as in the instant case, does not warrant a deduction with respect thereto in another year. Farmers & Merchants National Bank, 8 B.T.A. 58, 60 (1927). Under the circumstances, we need not consider whether petitioner has met the burden of proving that the alleged payment to Eichinger was made in 1952 or that the amount said to have been received by petitioner for Eichinger in 1951 was reported by petitioner for Federal income tax purposes in his return for that year. Petitioner, on brief, contends that if the claimed deduction is not allowable for the taxable year 1952, he is entitled in the alternative to an adjustment under section 1311 of the 1954 Code because of claimed overinclusion of the dividends in question in his 1951 return. The year 1951 is not before us. Assuming arguendo that petitioner may be entitled to a section *155 1311 adjustment growing out of the 1951 circumstances, this issue is not open to consideration by us at the present time. Any implementation of section 1311 must be in accordance with the provisions of section 1314 which are not operative under the circumstances of the instant case until a final decision (determination) is entered by this Court. See Kenosha Auto Transport Corporation, 28 T.C. 421, 425-426 (1957). Issue 3 Additions to Tax Under sections 58(a) and (d) and 59(a) of the 1939 Code (now sections 6015 and 6153 of the 1954 Code) petitioners were required to file a declaration of estimated tax within the times specified for the years 1952, 1953, and 1954 and to make periodic payments of such estimated tax. Respondent determined that petitioners were liable for additions to tax under section 294(d)(1)(A) for the taxable year 1954, and section 294(d)(2) for the years 1952 through 1954, inclusive. Pursuant to the decision in Commissioner v. Acker, 361 U.S. 87 (1959), respondent conceded the inapplicability of section 294(d)(2) to the year 1954. Petitioners did not present any evidence or argument on brief with respect to the remaining additions. Since petitioner has failed *156 to meet his burden of proof, we approve respondent's determination as to those additions to tax with respect to which he has not conceded error. Frank Souza, 33 T.C. 817 (1960). Decisions will be entered under Rule 50. Footnotes
a. In the notice of deficiency, respondent determined a deficiency in income tax for 1950 in the amount of $5,404.54. At the trial respondent conceded that the year 1950 is barred by the statute of limitations. Also, respondent conceded that section 294(d)(2) is inapplicable to 1954.↩
1. SEC. 166. REVOCABLE TRUSTS. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested - (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or * * *
then such part of the income of the trust shall be included in computing the net income of the grantor. (b) As used in this section the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question." * * *↩
2. SEC. 675. ADMINISTRATIVE POWERS. The grantor shall be treated as the owner of any portion of a trust in respect of which - * * *
(2) Power to borrow without adequate interest or security. - A power exercisable by the grantor or a nonadverse party, or both, enables the grantor to borrow the corpus or income, directly or indirectly, without adequate interest or without adequate security except where a trustee (other than the grantor) is authorized under a general lending power to make loans to any person without regard to interest or security. (3) Borrowing of the trust funds. - The grantor has directly or indirectly borrowed the corpus or income and has not completely repaid the loan, including any interest, before the beginning of the taxable year. The preceding sentence shall not apply to a loan which provides for adequate interest and adequate security, if such loan is made by a trustee other than the grantor and other than a related or subordinate trustee subservient to the grantor. * * *
SEC. 676. POWER TO REVOKE. (a) General Rule. - The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party, or both. * * *↩
3. 513.04 Conveyance of estate or interest in land; certain leases excepted No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing. * * *
4. Counsel for petitioner, in his preliminary statement, stated: Along in 1958, when I started to consider this case, I started checking into the matter and I found that there was never a deed on record transferring these properties to the trusts, so I immediately advised them to execute a deed, and a deed was recorded in December of 1958 in which was recited the situation, what caused the recording of the deed.
5. While in the instant case there is no express mention of the right of the trustees to invest in business in which they or either of them were interested, the language of the deeds of trust is clearly broad enough to permit them to do so, and it is clear that funds purporting to belong to the trusts were so invested.↩